## AMERICAN TOLL BRIDGE CO. v. RAILROAD COMMISSION OF CALIFORNIA ET AL.

No. 704.   Argued April 21, 1939.—Decided June 5, 1939.

*Mr. Max Thelen* for appellant.

*Mr. Ira H. Rowell* for appellees.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This appeal is from a judgment of the highest court of the State upholding an order of the state railroad commission that reduces tolls for use of appellant's bridge across the Carquinez Straits between the counties of Contra Costa and Solano. Appellant contends that the order violates Art. I, § 10, of the Constitution; that the commission's procedure was repugnant to the due process clause of the Fourteenth Amendment, and that the order, in violation of that clause, prescribes rates that are confiscatory.

February 5, 1923, the board of supervisors of Contra Costa County, exerting power conferred by state legislation,[1] passed ordinance No. 171 granting to the Rodeo-Vallejo Ferry Company a franchise to construct and for 25 years to operate the Carquinez bridge. June 4, 1923, the same board granted to the Delta Bridge Corporation a like franchise for the construction and operation of a bridge across the San Joaquin River near Antioch, between the counties of Contra Costa and Sacramento.

---

[1] Political Code, §§ 2843, 2845, 2846, and 2872 (as amended May 8, 1923, Cal. Stats. 1923, p. 272).

Each ordinance provides that, on the expiration of the franchise, the property rights, including title to the bridge, revert to the adjacent counties. Appellant became the owner of both franchises. The Antioch bridge was opened in January, 1926, and the Carquinez in May, 1927.

When the Carquinez bridge opened, the board of supervisors fixed tolls at 60 cents for automobiles and at 10 cents for each person in a vehicle or on foot.[2] That scale was in operation when the commission made the order in question which reduced these charges to 45 and 5 cents, respectively. Jurisdiction over toll bridges having been conferred upon it by a statute of 1937,[3] the commission in August of that year on its own motion commenced an investigation of all toll bridges. But, in October following, it commenced a separate proceeding solely to investigate reasonableness of Carquinez tolls. February 8, 1938, it announced its opinion and promulgated the order in question. Appellant obtained judicial review; the court upheld the order. 12 Cal. 2d 184.

The statutory provisions authorizing the county board to grant the franchises, ordinance No. 171, and the grantees' acceptance constitute a contract between the parties. *Contra Costa Co.* v. *American Toll Bridge Co.*, (1937) 10 Cal. 2d 359; 74 P. 2d 749. As to that, there is no controversy. But appellant contends that under the franchise it has a contract right that the bridge tolls shall not be reduced by the public authorities unless it shall first appear that they are yielding a rate in excess of 15 per cent upon the rate base specified by §§ 2845 and 2846, Political Code.

These sections provide:

§ 2845. "The board of supervisors granting authority to construct a toll-bridge . . . must at the same time: . . .

---

[2] The franchise ordinance fixed these tolls at 75 cents and 15 cents.

[3] Act of August 27, 1937, Cal. Stats. 1937, p. 2473.

"2. Fix the amount of license tax to be paid by the person or corporation for taking tolls thereon, not less than three dollars nor over one hundred dollars per month, payable annually.

"3. Fix the rate of tolls which may be collected for crossing the bridge . . . which must not raise annually an income exceeding fifteen per cent on the actual cost of the construction or erection and maintenance of the bridge . . . for the first year, nor on the fair cash value together with the repairs and maintenance thereof for any succeeding year; . . . " [4]

§ 2846. "The license tax and rate of toll fixed as provided in the preceding section must not be increased or diminished during the term of twenty years, at any time, unless it is shown to the satisfaction of the board of supervisors that the receipts from tolls in any one year is disproportionate to the cost of construction or erection, or the fair cash value thereof, together with the cost of all necessary repairs and maintenance of the bridge. . . . The license tax fixed by the board of supervisors must not exceed ten per cent of the tolls annually collected."

The state court held that § 2846 contemplates increases as well as reductions, limited by the 15 per cent maximum, at any time the disproportion is shown to exist. It construed the language of that section to be inconsistent with the intent to contract that appellant shall have a 15 per cent return, if yielded by the tolls specified in the franchise. The opinion explains that: "Rather is it to be assumed that the legislature intended, not only to afford an adequate and proportionate return to the grantee, but

---

[4] By Act of May 9, 1923, par. 3 was amended to read as follows: "Fix the rate of tolls which may be collected for crossing the bridge . . . which may raise annually an income not exceeding fifteen per cent on the actual cost of the construction or erection of the bridge . . . and such additional income as will provide for the annual cost of operation, maintenance, amortization and taxes of the bridge. . . ." Cal. Stats. 1923, p. 288.

that it also intended some measure of protection to the public's right to be charged not more than a reasonable toll for the use of the bridge. . . . In 1872, when section 2846 was enacted by the legislature, sufficient scope was allowed between both interests, public and private, to permit adequate elasticity in the exercise of the legislative rate-making function in the light of prevailing economic conditions. Such a statute does not savor of a contract obligation to the grantee. Its object was to delegate to and vest in the designated body the power to regulate tolls as circumscribed by the stated limitation." 12 Cal. 2d 195; 83 P. 2d 6.

Upon the issue whether the order is repugnant to the contract clause, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts," this Court, while inclining to the state court's construction, will decide for itself whether, as claimed by appellant, the franchise by contract limits exertion of sovereign powers to regulate tolls. *Georgia Ry. Co.* v. *Decatur,* 262 U. S. 432, 438. *New York Rapid Transit Corp.* v. *New York,* 303 U. S. 573, 593. And, if it plainly appears that it does, this Court will not hesitate so to adjudge. *Detroit United Ry.* v. *Michigan,* 242 U. S. 238, 251–253. *Cleveland* v. *Cleveland City Ry. Co.,* 194 U. S. 517, 524, 536. *Detroit* v. *Detroit Citizens Street Ry. Co.,* 184 U. S. 368, 382, 389. *St. Cloud Public Service Co.* v. *St. Cloud,* 265 U. S. 352. Compare *Georgia* v. *Chattanooga,* 264 U. S. 472, 480.

Upon an elaborate review of the California legislation relating to bridge tolls, appellant says that in the first period, 1850 to 1857, bridge franchises allowed owners to take only such tolls as the courts of sessions and, later, the county boards should fix annually; that in the second period, 1857 to 1864, tolls were limited to those fixed by county boards annually, subject to change by the legislature; that in the third period, 1862 to 1872, general statutes and special acts authorized such rates as the

county boards should annually prescribe, declaring, however, that they should not be so low as to make income less than a specified percentage of a defined base. On that foundation, it maintains that there was an evolution of policy to grant to builders and operators of bridges contract rights as to tolls. In that light it examines the language of §§ 2845 and 2846 and concludes that the proper construction of the franchise in question is that unless the yield becomes in excess of 15 per cent the license tax must not be increased and the rate of toll must not be diminished.

We assume, without detailed examination, that the legislation so portrayed indicates that in the period next preceding 1872, when the provisions of § 2846 were enacted, the State had adopted the policy of safeguarding operators of toll bridges against rate reduction by county boards below specified levels. But that fact may not be employed to arrive at a construction not indicated by the language used. So far as concerns the point under consideration, the meaning of the statutory provision is plain. Section 2845 requires the county board, when granting the franchise, to fix the license tax within specified limits and a rate of toll, which must not raise annually an income exceeding 15 per cent of base. Section 2846 declares that the license tax and the rate of toll so fixed must not be diminished unless receipts are disproportionate to base. Thus plainly the commands are that at first the tolls must be fixed, but not to produce income above the 15 per cent specified, and that the tolls so fixed shall not be diminished unless yield is disproportionate to the defined base. Neither in text nor in reason is the "fifteen per cent" prescribed as maximum yield tied to, or made the test by which to ascertain whether receipts from tolls are, "disproportionate." We construe these statutory provisions to negative appellant's claim that by the franchise in question the State bargained away power to reduce tolls for use of the Carquinez bridge unless

annual return becomes more than 15 per cent. See *e. g.* *Paducah* v. *Paducah Ry. Co.*, 261 U. S. 267, 275; *Banton* v. *Belt Line Ry. Corp.*, 268 U. S. 413, 417–419; *Railroad Commission* v. *Los Angeles Ry. Corp.*, 280 U. S. 145, 152, 155. The order is not repugnant to the contract clause.

Appellant claims that, in violation of the due process clause of the Fourteenth Amendment, the commission denied it a full and fair hearing and failed adequately to find the facts. The commission initiated the proceeding, entitled "In the matter of the investigation upon the commission's own motion, into the rates, charges, contracts, classifications, rules and regulations of American Toll Bridge Company covering its operation of the toll bridge over the Carquinez Straits between the counties of Contra Costa and Solano"; gave appellant notice that the investigation would extend to tolls for use of that bridge; accorded it opportunity to introduce evidence and present its contentions; and received the evidence offered by it, 233 pages of the printed record and numerous exhibits. Appellant submitted the case for decision without making any request for findings and without argument, oral or written. The commission, without formal findings, filed its decision which, sufficiently to meet requirements of due process, indicates the facts on which it made the order.

Then appellant filed petition for rehearing. That document, including eight captions and 12 sub-captions and an exhibit, occupies 39 printed pages of the record.[5] It

---

[5] I. Introduction.

II. Exclusion of Antioch Bridge.
    1. The Facts.
    2. Inevitable Effect of Decision on Tolls of Carquinez Bridge, Antioch Bridge and Martinez-Benicio Ferry.
    3. The Decision is Contrary to the Commission's Own Traditions and Policy.
    4. The Commission's Action Deprives American Toll Bridge Company of Its Property Without Due

specifically sets forth the grounds on which appellant claimed the decision to be unlawful. These include the commission's determination of the various classes of facts usually considered in cases in which prescribed rates are challenged as confiscatory. The petition contains no hint of claim that the commission denied appellant procedural due process. Nor was that specified in the petition for judicial review. *Morgan* v. *United States,* 304 U. S. 1, on which appellant relies, was decided after filing of that petition and before argument in the California court. That court rightly held it not in point.

        Process of Law in Violation of Guarantees of the Federal and the State Constitutions.

III. Failure to Give Fair Return on Fair Value of Carquinez Bridge.
  1. Calculations of Commission in Computing Its Rate.
  2. Errors in Commission's Computations.
    (1) Rate Base.
    (2) Money Available for Return on Rate Base (under 50¢ toll).
  3. Return Under Rate Fixed by Commission.
  4. In View of the Cost of Money to American Toll Bridge Company, a Return of Only 6.6% or 6.9% on the Fair Value of the Carquinez Bridge Would be Confiscatory.
  5. Summary as to Fair Return, Carquinez Bridge.

IV. Failure to Give Fair Return on Fair Value of Carquinez and Antioch Bridges.
  1. Rate Base.
  2. Return Under Rate Fixed by Commission.
  3. Effect of Commission's Decision Would be to Confiscate Property of American Toll Bridge Company in Both Carquinez and Antioch Bridges.

V. Under Commission's Tolls American Toll Bridge Company Would be Unable to Meet Its Requirements to Its Bondholders and Stockholders.

VI. Impairment of Contract Obligations.

VII. False Analogy With Publicly Owned and Operated San Francisco Bay Bridges.

VIII. Violation of Constitutional and Statutory Rights.

494

Appellant also claims that the commission denied it procedural due process by excluding the Antioch bridge rates from the proceeding. It moved to include with this proceeding an investigation of the Antioch bridge tolls. In support of the motion, it suggested that the bridges are part of a single system but compete with each other; that operations of the Antioch are less satisfactory financially than those of the Carquinez; and that reduction of Carquinez tolls would force reduction of Antioch tolls.

In the first instance, at least, determination of the proper unit for rate making was for the commission. The Antioch bridge is not used or useful to render any service covered by the Carquinez tolls; appellant's duty to operate either bridge is independent of its obligation to operate the other. The record discloses no basis on which it reasonably may be held that by limiting the investigation to the Carquinez tolls the commission abused its discretion, and clearly there is no foundation for the claim that in excluding the Antioch the commission denied appellant procedural due process. See *Gilchrist* v. *Interborough Co.*, 279 U. S. 159, 206, 209. *Wabash Valley Electric Co.* v. *Young*, 287 U. S. 488, 495–8. *Florida Power & Light Co.* v. *Miami*, 98 F. 2d 180. *International Ry. Co.* v. *Prendergast*, 1 F. Supp. 623. Cf. *Coney* v. *Broad River Power Co.*, 171 S. C. 377; 172 S. E. 437.

There is no foundation for the claim that the commission's procedure violated the due process clause of the Fourteenth Amendment.

There remains for consideration the contention that the prescribed rates are confiscatory. The burden is on appellant to show that enforcement of the order will compel it to furnish the service covered by the reduced rates for less than a reasonable rate of return on the value of the property used, at the time it is being used, for that service. And, in the absence of clear and convincing proof that the reduced tolls are too low to yield that return, it

may not be adjudged that the State by enforcement of the measure complained of will deprive appellant of its property without due process of law. *Chicago & G. T. Ry. Co.* v. *Wellman,* 143 U. S. 339, 344–345. *San Diego Land & Town Co.* v. *Jasper,* 189 U. S. 439, 441, 446. *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1, 8, 16. *The Minnesota Rate Cases,* 230 U. S. 352, 433, 452. *Brush Electric Co.* v. *Galveston,* 262 U. S. 443, 446. *Aetna Insurance Co.* v. *Hyde,* 275 U. S. 440, 448.

The terms of the order must first be given attention. It directs appellant to change the items of its schedule of charges, reading as follows: "Passengers (7 years of age and older) on foot or in vehicles . . . $.10. Auto only . . . .60" so as to read: "Passengers (7 years of age and older) on foot or in vehicles . . . .05. Auto only . . . .45." Thus, the order extends only to automobiles and passengers. The Carquinez franchise specifies, until otherwise ordered by the commission, tolls applicable to other classes of traffic crossing the bridge, namely, bicycles, carts and wagons, commercial or delivery automobiles and motor trucks, ditchers, harvesters, etc., cattle and stock, motor stages to which commutation rates are applied when operated as specified, freight, hearses, horses, motorcycles, and trailers.

Appellant fails to establish, by allocation or apportionment to the traffic covered by the tolls so reduced, the operating expenses, cost of depreciation, taxes, and contributions to the sinking fund for amortization of investment that are fairly attributable to the service covered by the order; it also fails to establish the amount of property value that is justly assignable to that traffic. Obviously, the return to be yielded by the reduced tolls cannot be found without comparison of the revenues to be derived from the service with the amounts of operating expenses and other charges rightly to be made against them. Inadequacy of revenues from all traffic

does not tend to show that the rates on automobiles and persons prescribed by the commission's order are too low. *The Minnesota Rate Cases, supra,* 452–453. *Baltimore & Ohio R. Co.* v. *United States,* 298 U. S. 349, 372, 378, 381. It follows that appellant is not entitled to a decree that the order is confiscatory.

More need not be written to dispose of the issues presented in this case. But in view of appellant's earnest contentions, it is not inappropriate to say that the record, considered in the light of its argument, fails to show that the rate reduction will so lessen revenues from the Carquinez bridge that there will remain less than sufficient, under the due process clause, to constitute just compensation for its use—a reasonable rate of return on the value of the bridge property.

*Judgment affirmed.*

MR. JUSTICE BLACK, MR. JUSTICE FRANKFURTER and MR. JUSTICE DOUGLAS concur in the result.