HOWARD E. CAMMACK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD ARTHUR CAMMACK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3822, 3823. Promulgated July 19, 1945.

*C. C. Goodson*, *Esq.*, and *E. F. Hoeschen*, *Esq.*, for the petitioners. *Ned Fischer*, *Esq.*, for the respondent.

468

OPINION.

LEECH, *Judge*: The issue is whether the disallowed expenses petitioners paid in 1940 allocable to the recovery of the overpayment of income taxes for 1932 are deductible in computing their income taxes for 1940 under section 23 (a) (2) of the Internal Revenue Code.[1]

Respondent denies deductibility only on the grounds, apparently, that (1) the suit, in which the expenses were incurred and paid, was not brought to produce income, but to recover taxes, and (2) the property (stock) was known to be worthless, at least when the suit was brought; was thus not then held by petitioners for production of income; and, accordingly, the expenses of the suit were therefore not those of "management, conservation, or maintenance of property held for the production of income."

Assuming the validity of the first ground, the question still remains as to that of the second. *Trust u/w of Mary Lily (Flagler) Bingham v. Commissioner*, 325 U. S. 365.

In the cited case a trust had paid legal fees in the taxable year, incurred in connection with legal problems arising after the term of the trust expired and while the distribution of the trust fund was pending. In computing its income tax for that year the trust had deducted the amount of these fees under section 23 (a) (2) of the code—the same statutory provision involved here. The respondent disallowed the deduction.

In finally approving the deduction the Supreme Court said, *inter alia:*

* * * But the duties of the trustees were not only to hold the property for the production of income and to collect the income, but also, in administering the trust, to distribute the income and the principal so held from time to time, and the remainder of the principal at the expiration of the trust. Performance of each of these duties is an integral part of carrying out the trust enterprise. Accordingly, as the Tax Court held, the costs of distribution here were quite as much expenses of a function of "management" of the trust property as were expenses incurred in producing the trust income; and if "ordinary and necessary," they were deductible.

* * * * * * *

What we have said applies with equal force to the expenses of contesting the tax deficiency. Section 23 (a) (2) does not restrict deductions to those litigation expenses which alone produce income. On the contrary, by its terms and in analogy with the rule under § 23 (a) (1), the business expense section, the trust, a taxable entity like a business, may deduct litigation expenses when they

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

* * * * * * *

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

are directly connected with or proximately result from the enterprise—the management of property held for production of income. *Kornhauser* v. *United States, supra*, 152–153; *Commissioner* v. *Heininger, supra*, 470–471. The Tax Court could find as a matter of fact, as it did, that the expenses of contesting the income taxes were a proximate result of the holding of the property for income. And we cannot say, as a matter of law, that such expenses are any less deductible than expenses of suits to recover income. Cf. *Commissioner* v. *Heininger, supra*.

The petitioners are in the same position as the trust in that case. We think that, for present purposes, "management" of their stock by petitioners may with sufficiently comparable force be said to include the effort to deduct their bases for that worthless stock in computing their income taxes for 1932. The economic benefit resulting from that deduction was the natural—in fact the only—means reasonably left to them of obtaining any such benefit. Likewise, in our opinion the litigation to recover a refund of the taxes paid following the disallowance of that deduction was a natural consequence of and just as proximately connected with that act of "management" as the contest of the deficiency in the *Bingham* case.

That petitioners knew the stock had become worthless before the suit was brought or the fees paid does not change the fact that it was bought and, when the act of "management" occurred which proximately resulted in the disputed expenses, was "held for the production of income." That, we think, is sufficient to justify the contested deduction.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

SMITH, *J.*, concurs only in the result.

---

MELLOTT, *J.*, dissenting: The conclusion reached by the majority seems to me to be incorrect. The attorney fees paid by petitioners were not ordinary—passing the question of necessary—expenses for the management, conservation or maintenance of property. Assuming that these words were used in their natural, ordinary, and familiar sense, it is noted that the most obvious and rational meaning of "management," as given in standard dictionaries, is the act or manner of treating, directing, carrying on, or using, for a purpose. "Conservation" is a conserving, preserving, guarding, or protecting. "Maintenance" is a holding or keeping in a particular state or condition, especially in a state of efficiency or validity.

The genesis of the section relied upon supports the conclusion that the words were used in the sense indicated in the preceding paragraph. Before decision of the *Higgins* case in 1941 (*Higgins* v. *Commissioner,* 312 U. S. 212) many cases had arisen in this and other courts involving

deductions claimed by an investor as an expense of managing his investments. The test applied in passing upon the allowance in each case was whether they were ordinary and necessary expenses of carrying on a business. If so, they were allowed. See, e. g., *Harvey H. Ostenberg*, 17 B. T. A. 738; *C. W. Stimson*, 22 B. T. A. 26; *Cornelia W. Roebling*, 37 B. T. A. 82; and *Kales* v. *Commissioner*, 101 Fed. (2d) 35. If not, they were disallowed. See, e. g., *Bedell* v. *Commissioner*, 30 Fed. (2d) 622; *Kane* v. *Commissioner*, 100 Fed. (2d) 382; and *Byrnes* v. *Commissioner*, 128 Fed. (2d) 616. This view was approved by the Supreme Court in the *Higgins* case. Congress, believing the test should be whether the expenses were incurred "for the production or collection of income or for the management, conservation or maintenance of property held for the production of income," rather than whether they were business expenses, enacted the statute we are now being called upon to construe. It retained the requirement, however, that such expenses must be "ordinary and necessary"; so it may be assumed that they intended them to be of the type referred to in *Kornhauser* v. *United States*, 276 U. S. 145, and *Deputy* v. *DuPont*, 307 U. S. 488—a point not discussed in the instant case.

The quotation from the *Bingham* case, set out in the opinion of the majority, does not, in my judgment, permit an individual taxpayer to deduct attorney's fees paid in a controversy with the Government over the amount of his income tax. The fact that the securities upon which the loss giving rise to the controversy occurred may have been property held for the production of income is not sufficient. The Court in the *Bingham* case recognized the distinction I am urging when it said: "* * * the trust, a taxable entity like a business, may deduct litigation expenses when they are directly connected with or proximately result from the enterprise—the management of property held for production of income."

The majority holds that management of their stock by petitioners "may with sufficiently comparable force be said to include the effort to deduct their bases for that stock in computing their income taxes for 1932." This seems to be predicated upon the assumption that otherwise the statute could do these particular taxpayers no good; for it is said: "The economic benefit from that deduction was the natural—in fact the only—means reasonably left to them of obtaining any such benefit." That, it seems to me. is largely just words. Such a straining of the word "management" is not justified.

Since the enactment of the first revenue act it has uniformly been held that purely personal expenses may not be deducted unless specifically allowed by statute. The statute (sec. 23, I. R. C.) allows the deduction of interest, taxes, losses (in trade or business, in a transaction entered into for profit, from fire, storm, casualty, etc.), bad debts,

contributions, and ordinary and necessary business expenses. So far as I have been able to find, attorney fees paid in income tax litigation have never been allowed except as ordinary and necessary business expenses, cf. *Caroline T. Kissell*, 15 B. T. A. 1270; *Estate of Henry N. Brawner, Jr.*, 36 B. T. A. 884, or under circumstances covered by the new section, such as the *Bingham* case, where they were clearly for the management, conservation, and maintenance of property held for the production of income. We refused to apply any other rule in *John W. Willmott*, 2 T. C. 321, under facts much stronger for the taxpayer than those now before us. Apparently that case and *R. C. Coffey*, 1 T. C. 579, are now being overruled, although not mentioned. I do not believe that is justified or required by the *Bingham* case, which, it should be kept in mind, merely approved the action taken by us when the case was before us (*Mary Lily Bingham Trust*, 2 T. C. 853). That we were conscious of the rule applied in the *Willmott* and *Coffey* cases and were not willing to abandon it is implicit in the majority opinion and is clearly indicated in the concurring opinion by the judge who wrote the opinion in the *Willmott* case.

It may well be that Congress should allow all taxpayers to deduct the expenses of carrying on litigation with the Government involving their income tax liability; but until it says so in unmistakable language I prefer to follow the *Willmott* and *Coffey* cases. Apparently the majority assumes that the expenditures were not made "for the production or collection of income"; so the validity of petitioner's claim upon that ground—if made—does not need to be discussed. In my judgment, however, such claim would be untenable, notwithstanding the fact the suit may have resulted in recovering tax previously paid and to that extent may have improved petitioners' economic position.

Being of the opinion that the claimed deductions may not be allowed under the section cited, I respectfully note my dissent.