WILLIAM HEYMAN AND LYDIA HEYMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6964. Promulgated April 23, 1946.

*Harry J. Stein, Esq.*, for the petitioners.
*Harold D. Thomas, Esq.*, for the respondent.

800

**OPINION.**

Murdock, *Judge*: The petitioners contend that the buildings demolished to save taxes had a value of $17,500 at the date they were destroyed. They argue that they are entitled to deduct that amount

as a loss. They do not cite any provisions of the statute in support of this contention, but rely heavily upon *Union Bed & Spring Co.* v. *Commissioner*, 39 Fed. (2d) 383, reversing 9 B. T. A. 352. The Circuit Court in that case allowed the taxpayer to deduct an amount equivalent to the value in 1920 of the property destroyed, less depreciation and salvage, and said that would be a "proper method of computation, and quite as fair as attempting to allocate the purchase price to the demolished parts, which would be very difficult indeed, if not impossible." The taxpayer in that case purchased the property on September 2, 1920, with no intention to demolish any part of it. It discovered, when it went to remodel a building, that changes would have to be made which involved the demolition of a part of the building. The demolition was completed in 1920. The current value less depreciation and salvage at least approximated the adjusted basis for the portions of the property which were demolished, in view of the fact that the purchase and demolition took place in the same year and within a few months. That case is not authority for allowing a deduction, allegedly based upon value of property at the time of its demolition, substantially in excess of the adjusted basis for the property demolished. Furthermore, if it does stand for any such proposition as the petitioner contends, then this Court respectfully declines to follow it because it is not in conformity with the provisions of the code granting a deduction for a loss. A deduction for loss under section 23 (e) (1) or (2) is limited to the adjusted basis for gain or loss provided in section 113 (a) and (b).

The petitioner, encouraged by the *Union Bed & Spring Co.* case, has assumed that it is impossible to allocate the lump sum cost of the property to the various buildings and thus to find the unexhausted cost basis of the six buildings destroyed. Some such allocation was absolutely necessary for computing annual deductions for depreciation and there is no showing here that such allocation is impossible.

The petitioner paid $24,327.88 for the mortgages and later made an additional cash payment of $2,337.36 on account of back taxes in connection with the foreclosure. Thus, she paid a total of $26,665.24 in acquiring the property. The record does not show that she sustained any loss or realized any gain in connection with the foreclosure and purchase of the property. Neither does it show that she reported any gain or loss from that transaction on her return for 1937. Therefore, we must conclude that her basis for gain or loss on the property was $26,665.24 at July 30, 1937.

There is evidence to indicate that it would be proper to allocate to the buildings demolished about one-third of the cost of the entire property, and there is also evidence to indicate that a proper rate of depreciation on these buildings was about 5 percent. We have concluded, from a consideration of all of the evidence in the case, that

the loss sustained by the petitioner in the demolition of the buildings in 1941 was $6,889. Thus, the Commissioner erred in allowing only $3,000, but the petitioner is far from the mark in claiming $17,500.

The remaining issue is whether the petitioners are entitled to a deduction of $625 paid by them in 1941 for services of a firm of accountants. They make this claim under section 23 (a) (2) of the code, which allows the deduction of nontrade or nonbusiness ordinary and necessary expenses paid during the taxable year for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. This issue is decided for the petitioners upon authority of *Herbert Marshall*, 5 T. C. 1032, in which we relied upon *Bingham Trust* v. *Commissioner*, 325 U. S. 365. See also *Howard E. Cammack*, 5 T. C. 467.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DISNEY, *J.*, dissenting: With reference to the second issue, the only facts shown in the report are that the petitioners paid $625 to accountants for services performed by them in conferences and consultations with representatives of the Bureau of Internal Revenue, who were examining petitioners' returns, as result of which petitioners paid additional tax, and in handling a dispute with the New York State Tax Commission involving the "Emergency Tax," which was later repealed. In my opinion, such meager facts altogether fail to justify the deduction of such expenses under section 23 (a) (2) of the Internal Revenue Code.

Reliance is placed by the majority on *Bingham Trust* v. *Commissioner*, 325 U. S. 365; *Howard E. Cammack*, 5 T. C. 467, and *Herbert Marshall*, 5 T. C. 1032. In the *Bingham Trust* case, the Supreme Court, with reference to the expense of contesting income taxes in a controversy over the appreciation in value of securities while they were in the petitioner's hands, said:

\* \* \* The Tax Court could find as a matter of fact, as it did, that the expenses of contesting the income taxes were a proximate result of the holding of the property for income. And we cannot say, as a matter of law, that such expenses are any less deductible than expenses of suits to recover income. \* \* \*

The Supreme Court's decision was in general based upon the idea that expenses by trustees with reference to the estate in their possession, came within the expression "management" of trust property held for the production of income. It seems to me obvious that that decision helps not at all in this case, where the payments were made, not for contesting income taxes found to be "a proximate result of the holding of the property for income," as found in the *Bingham Trust* case, but

merely for conferences and consultations with Bureau representatives examining the petitioners' returns and for handling "a dispute with the New York State Tax Commission involving the Emergency Tax." As to the latter, the record is completely devoid of any showing of connection with management, conservation, or maintenance of property held for the production of income, or with the production or collection of income. We simply know nothing about the matter, except that it involved the New York State Tax Commission and some kind of a tax, the nature of which, or the subject matter of which is not disclosed. As to the former, payment for consultations with Bureau representatives examining petitioners' returns, I suggest that no court should hold that there is a showing of the proximate cause which is seen to be requisite under the *Bingham Trust* case, since as above seen the Court declined to disturb our holding that the expenses of contesting income taxes were a *proximate result* of holding property for income. The consultations with Bureau representatives in the instant case may, so far as we know from the facts found here, have had no connection whatever with production or collection of income or the holding of property for income, e. g., the sole question at issue between the Bureau representatives and petitioners' representatives may have been whether the petitioners could deduct expenses of defending suits for damages for personal injuries inflicted by the petitioners' personal actions, or it may have been as to whether petitioner William Heyman was the head of a family, or as to how many dependents he had. Other examples could be collected to illustrate possible arguments between revenue agents and petitioners' representatives, but involving no property at all, and no production or collection of income.

That the *Howard E. Cammack* case should not be found basis for the majority conclusion here is shown in the first two lines of the headnote therein, which read: "Petitioners had each bought stock in Kreuger & Toll 'for the production of income' and had received dividend income thereon before and during 1931." Thus we see at once that the case involved property held for the production of income, clearly within section 23 (a) (2) of the Internal Revenue Code.

The *Herbert Marshall* case allowed attorney fees and expenses in connection with the successful defense of income tax litigation growing out of a view by the Commissioner that Marshall "was not entitled to report his income on the community property basis under the laws of California." The deductions were taken for 1940 and 1941, and the record shows his assets and liabilities as of December 31 of each of said years, including property in large amounts, to be about $114,000 in 1940 and about $156,000 in 1941. Such property included cash, stocks and bonds, life insurance, and annuities. It is therefore instantly obvious that the expenses involved "were a proximate result

of the holding of the property for income," within the language of the *Bingham Trust* case. In my opinion, the record here fails to show the necessary proximate connection between payments and the income or the property mentioned in section 23 (a) (2). I do not think that when Congress added subsection 23 (a) (2) by section 121 of the Revenue Act of 1942, it intended the subsection as a catch-all; and I think it plain from the *Bingham Trust* case that the Supreme Court requires some proximate connection between the expenses sought to be deducted and the production or collection of income or management, conservation, or maintenance of property held for such production of income, within the text of section 23 (a) (2). The Court allows the deduction only if the expense is "directly connected with or proximately result from" such production or collection of income or management, conservation, or maintenance of property held for the production of income. Showing thereof, in my view, is conspicuous in this case only because of its absence. I therefore respectfully dissent.

ARNOLD and KERN, *JJ.*, agree with this dissent.