M. J. Donnelly v. Commissioner.
Donnelly v. Commissioner
Docket No. 13649.
United States Tax Court
1948 Tax Ct. Memo LEXIS 43; 7 T.C.M. (CCH) 839; T.C.M. (RIA) 48244; November 15, 1948
*43 Leonard Boreman, Esq., for the petitioner. S. L. Drexler, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves deficiencies in income taxes for the years 1939, 1940 and 1941, in the amounts of $376.76, $600.24 and $216.12, respectively. Petitioner asks a finding of overpayments because of previous assessments paid. The only issue to be determined is whether the petitioner is entitled to certain deductions claimed for traveling expense, salaries and wages, advertising and gifts expense, rentals expense, telephone and telegraph expense, automobile expense, postage expense, notary and attorney's fees, and bad debts. Other issues raised by the petitioner were abandoned at the hearing. The amounts claimed by petitioner as deduction on his Federal income tax returns and the amounts allowed and disallowed by the Commissioner in computing the deficiencies are as follows: Claimed on
Income Tax
Returns
Disallowed
Allowed
Traveling
Expense
1939
$3,481.00
$2,728.87
$ 752.13
1940
3,467.10
1,921.44
1,545.66
1941
1,383.21
947.46
435.75
Salaries and Wages
1939
4,050.00
436.50
3,613.50
1940
3,896.00
363.00
3,533.00
1941
3,523.70
632.90
2,890.80
Advertising and Gifts
1939
1,609.17
891.45
717.72
1940
1,496.85
814.30
682.55
1941
1,306.56
558.56
748.00
Telephone and Telegraph Expenses
1939
596.30
27.00
569.30
Automobile Expense
1939
1,062.08
456.51
605.57
1940
830.17
35.94
794.23
1941
554.90
66.81
488.09
Postage Expense
1939
501.30
281.59
219.71
1940
434.47
234.29
210.18
1941
441.83
299.89
141.94
Notary Fees or Notary and
Attorney's Fees
1939
115.00
115.00
1940
1,251.48
1,251.48
1941
145.25
153.50
(8.25) *
Bad Debts
1939
1,292.68
507.10
785.58
1940
1,556.43
1,366.70
189.73
1941
527.22
527.22
*44 From evidence, both documentary and oral, we make the following Findings of Fact General Facts During the years 1939, 1940 and 1941, petitioner resided and maintained his office at New Castle, Pennsylvania. His income tax returns for these years were filed on a cash basis with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh. Petitioner's principal business during the taxable years was that of selling life insurance for the Equitable Life Assurance Society of the United States (hereinafter sometimes called Equitable). The following schedule shows the source of petitioner's income from his life insurance business: 1939
1940
1941
First year commissions
$ 7,888.61
$ 9,958.54
$ 4,498.69
Renewal commissions
5,980.86
5,154.60
4,758.37
Expense allowance from Edward A. Wood Co.
3,600.00
3,600.00
3,600.00
Total income from insurance
$17,468.67 *
$18,713.14
$12,757.06 * During the year 1939, petitioner wrote between *45 $500,000 and $700,000 in face amount of policies. He wrote a similar amount in 1940. In 1941, the amount written was fifty or one hundred thousand dollars less than 1939. The amount of money which passed through petitioner's office, together with the number of transactions involved, is as follows: Number
of Trans-
Kind of
Year
Amount
actions
Transactions
1939
$100,730.54
1,560
Collections, renewals,
etc.
67,946.75
193
First year premiums
3,150.00
48
Rent collections
1940
190,565.22
1,369
Collections, renewals,
etc.
72,463.61
135
First year premiums
9,550.00
48
Rent collections
1941
111,508.00
1,236
Collections, renewals,
etc.
81,786.72
160
First year premiums Petitioner is a life member of the Million Dollar Round Table of Equitable which means that at some time he wrote a million dollars of insurance per year in face amount of policy for a period of three consecutive years. 1. Traveling Expense Petitioner traveled extensively during the taxable years 1939, 1940 and 1941. On some of his trips he traveled by automobile and some by train. On his trips by automobile he was often accompanied *46 by his chauffeur. On his trips where it was estimated that he would be away from home more than three, four or five days, his wife would invariably accompany him, if she had nothing else to detain her at home. Each summer during the taxable years petitioner had an "outing" at Ocean City, New Jersey, for a month or more. On these trips he was accompanied by his wife, his daughter and his grandchild. In 1941 his daughter's maid also made the trip. Petitioner had an expense allowance of $5.50 per day for two or three days of these "outings." Petitioner attended a convention in 1939 at New York City, having to do with the 80th anniversary of Equitable. He was reimbursed for his railroad fare and minimum pullman accommodations. In 1941 petitioner was indicted, tried by a jury in the United States District Court for the Western District of Pennsylvania at Pittsburgh, Pennsylvania, and convicted for criminal income tax evasion and paid a fine of $5,000. In connection with his defense against the charges in this indictment he made several trips to Pittsburgh. During the year 1939 petitioner's check book shows checks written for $2,284.15, designating a hotel or one of his employees *47 as payee. These checks have notations on them, such as, "cash for travel," "cash for travel, postage, etc.," "cash for self, travel & entertainment," "Travel" and other notations or combinations of the above statements indicating travel expense. Travel expense checks in general are in round numbers. During the year 1940 petitioner's check book shows checks written for $686, with designated payees and notations similar to those above described for 1939. During 1941 petitioner's check book contained a check for $20 made out to "cash" with the notation "travel to Pittsburgh" written thereon. Petitioner paid $346.93 to the Flanders Hotel, Ocean City, New Jersey, August 1, 1941. The bill rendered to "Mr. M. J. Donnelly & wife" included amounts for room and board, room service, telephones, newspapers and cash. Petitioner also paid a bill to the same hotel on August 1, 1941, rendered to "Mrs. John Byers and daughter and maid" for the amount of $209.45. 2. Salary and Wages Homer Anderson has been employed by the petitioner for the past 20 years. During the years 1939, 1940 and 1941, petitioner paid Anderson wages, as follows: $873, $726 and $896.10, respectively. Petitioner deducted the *48 entire amount paid Anderson on his income tax returns for the taxable years. Anderson acts as chauffeur, mechanic and handyman. He keeps petitioner's automobiles, one used 75 per cent for business, the other 90 per cent for business; he runs errands; acts as chauffeur on some of the trips, including both business and pleasure, which petitioner makes. He also performs domestic duties in and around petitioner's residence, including such tasks as housecleaning, mowing of the lawn, acting as petitioner's wife's chauffeur and similar tasks. Anderson devotes half of his time to petitioner's business and half of his time to petitioner's personal affairs. During 1941 petitioner reimbursed his son-in-law, John P. Byers, the amount $40of, such amount representing cash advanced by Byers for the purchase of stamps and other things. Petitioner also made a payment of $144.85 on a life insurance policy he gave Byers. 3. Advertising and Gift Expense During the year 1939 petitioner wrote checks in the amount of $373.70, the payees being the Castletown Hotel (located one block from petitioner's office), Davis Shoe Co., and New Castle Field Club. During the year 1940 petitioner wrote checks in *49 the amount of $377.07, the payees being the Castletown Hotel and the William Penn Hotel. (Petitioner does not claim a deduction for $74.05 of this amount). During the year 1941 petitioner wrote checks in the amount of $281.65 to the Castletown Hotel. He concedes error in claiming $22.40 of this amount. 4. Rentals Petitioner owns and maintains a residence containing 17 rooms in New Castle. During the taxable years here in question he used two of the rooms in his residence for his insurance business. During the taxable years petitioner deducted $50 a month for the use of the two rooms. No specific expense paid by petitioner pertained to the use of these rooms. The $50 a month deduction was made because petitioner was occupying the rooms and denying them to his family. The amounts claimed as a deduction were not included as income on petitioner's Federal income tax returns filed for the years 1939, 1940 and 1941. 5. Telephone and Telegraph Expense Petitioner does most of his long distance telephoning that emanates from New Castle from his personal residence. 6. Automobile Expense During the years 1939, 1940 and 1941, petitioner owned two automobiles, a Dodge and a Lincoln. *50 The Dodge was used "almost exclusively" for business and the Lincoln 75 per cent for business and 25 per cent for personal use. 7. Postage Expense In the conduct of petitioner's life insurance business, it was necessary for him to maintain contact with policyholders and prospective policyholders, and for this purpose he sent large amounts of mail consisting of circulars, Christmas greeting cards, birthday cards and calendars. In addition to his regular correspondence he had a constant influx of new and old policies that required postage. The postage on each policy was nine cents, as was the postage on calendars. Postage purchased with cash was at times later reimbursed by check. 8. Notary and Attorney's Fees During the year 1940 petitioner expended $26.50 for notary fees, and $269.98 for attorney fees in connection with Federal income tax deficiencies before the United States Board of Tax Appeals, and $500 in connection with an income tax indictment case. (The latter fee also included defending a tax deficiency.) Petitioner was found guilty as indicted. During the year 1941 petitioner paid an attorney, who appeared as a character witness in the Federal income tax indictment *51 case, his expenses in the amount of $153.03. 9. Bad Debts A note for $209.20 to cover an insurance policy sold to Duersten was charged off by petitioner as a bad debt during the year 1939. Petitioner found out that Duersten, the maker of the note, had gone through bankruptcy proceedings in California a year or two before and at that time resided in Chicago. The maker of a note for $221.29, DeFillipo, died "several years ago." The amount was charged off as a bad debt during 1939. Both the Duersten and DeFillipo notes were given to cover first-year premiums of policies. Another note charged off by petitioner during 1939 was one for $32.03; the maker of the note was Zuba, a girl who worked at petitioner's house at one time. A note for $46.07, the maker of which was Maser, was charged off during 1939. Subsequent to 1939, petitioner has collected $20 on this note. A note charged off by petitioner during 1940, in the amount of $1,240.97, was made by Kaplan, a doctor. Petitioner was advised by his attorney not to start legal proceedings but to see if the money could be obtained in another manner. The debt was subsequently settled in 1948 for $1,200. The amount of $103, owed by Wallace *52 Allen, was charged off during 1940. Allen works at the Clairton Steel Works. He "just doesn't want the policy and he wouldn't pay for it." The amount of $25.02 was the balance of a larger note due from Bryan. This amount was charged off during the year 1940. Opinion For the sake of clarity the questions presented in this matter will be discussed in the same order and under the same headings, as set forth in our findings of fact. 1. Traveling Expense Petitioner in his tax returns for the years 1939, 1940 and 1941, claimed $3,481, $3,467.10 and $1,383.21, respectively, for traveling expense. The Commissioner has disallowed the following amounts: $2,728.87 for 1939, $1,921.44 for 1940, and $947.46 for 1941. Petitioner's proferred proof goes only to $2,297.35 of the amount disallowed for 1939, to $795.50 for 1940, and $893.47 for 1941. Respondent does not contend that any part of the amounts attempted to be proved on the part of the petitioner was included in the amounts allowed by the Commissioner. We assume, therefore, that the attempted proof goes only to the amounts disallowed by the Commissioner. The proof offered is in general very unsatisfactory. The checks for $2,284.15 *53 for the year 1939 written to hotels and petitioner's employees, along with the comments about them made by petitioner at the hearing, does not substantiate such expenditures of the amounts claimed. The checks, at most, prove that such amounts were checked out of the bank and at some time notations were made on the check stubs. There is no evidence in the record as to when these notations were made. We are far from convinced that the money was used for the purposes claimed. We have the testimony of petitioner wherein he reads the list of disallowed items and makes statements concerning the amounts, but, in effect, this does not offer any further proof than the checks themselves, as practically all the information given in this testimony could be as easily deciphered by us from the checks and stubs. The only evidence to some of the expenditures claimed are statements on the back of some of the check stubs that certain amounts were spent for "gas," "trip," "spent cash in addition" or the like. In general amounts of travel expense checks are in round numbers, indication that accounts were not actually kept as expense was incurred. Inconsistency of petitioner's testimony creates a doubt *54 in our minds as to how much of his proferred proof we can believe. For example: At one place in his testimony petitioner states that he made one business trip to New York during 1939; yet, in another place, he asks that amounts of checks be allowed as travel expense made out to hotels in New York during the months of July, August, September and December 1939. The proof is moreover often vague and indefinite. Thus he claims an item of $200 for 1941 which he explains as follows: "The next check is for $200.00 and covers miscellaneous cash that Homer Anderson and I used in connection with our trips to Yardley, Bucks County, in the Cole Spring Bleacheries case." Again the testimony in regard to the next item claimed in his schedule for $173.47 is explained in similar loose language, it being half of a larger check, the other half apparently being allowed by the Commissioner. Such testimony is not such as overcomes the presumption of correctness accorded the respondent's determination. The next item claimed on the petitioner's schedule is the amount of $500 to the Flanders Hotel, Ocean City, New Jersey. This claim is the only one substantiated by receipts. The receipts are for $556.38, *55 being broken down into two bills, one addressed to M. J. Donnelly and wife for $346.93, the other to Mrs. John Byers and daughter and made for $209.45. Petitioner, in his oral testimony, contends that the total expenditure on this trip was $1,056.38, $500 of which should be allocated to business. Petitioner makes no claim as to the nature of this $500 expenditure, other than half of the total amount ($1,056.38) was business expense. This is the question we have to decide and his categorical statement to that effect is nothing more than a conclusion. We actually have no evidence to say the $500 was a business expense. It does not appear that the $209.45 payment for his daughter and family was a business expense. There is no evidence of record indicating what portion of the $346.93 payment is for business, or if any of the amount was expended for business purposes. Under the circumstances, we can not allocate any of this amount to petitioner's business. After examining the entire record on this point we feel that much of the testimony of petitioner was self-serving; much of it was contradicted, some by petitioner himself, some by other witnesses. We also take into account the fact *56 that in each of the three years, petitioner claimed a large amount for traveling expense, and that a portion of the amount was allowed by the respondent. The respondent has allowed petitioner a substantial amount as traveling expenses and we have not been convinced that any additional amount should be added thereto. Though conduct of business entails expense, the amount of insurance written is not of itself proof that travel was necessary, to any degree larger than deductions were allowed, and on the condition of the record, involving family expenses, and lack of corroborative records reasonably to be expected, we can not say that the Commissioner's allowances were not sufficient. 2. Salary and Wages In regard to work performed by Anderson, again we can not say that the petitioner has showed error on the part of the respondent in disallowing half of the wages paid Anderson during the taxable years. A direct conflict appears in the testimony as to the amount of personal services Anderson performed for petitioner. In making our finding that Anderson's services were divided half and half between business and personal, we have considered all the evidence but have noted specially the *57 fact that petitioner claimed the entire amounts paid Anderson in his returns, while at the hearing his testimony was that Anderson's services were 80 per cent in connection with business. No reason was given for this change in view. We have other testimony that Anderson's services should be divided equally between business and personal expense. Considering all the evidence before us with respect to the amount of $184.85 deducted by petitioner for the year 1941 as alleged salary and wages of Byers, his son-in-law, we hold that petitioner has failed to show error by the respondent in his determination. As to the $40 payment (a part of the $184.85) to Byers, we can see no connection between it and a salary or wage. According to the evidence, it is nothing more than a repayment of an advancement made by Byers to petitioner's business. Neither can we make a determination that the remaining $144.85 paid on an insurance policy is the payment of a salary or wage to Byers. It is true that petitioner testified that both Byers and wife had performed some services for him but the nature or amount of services are not discussed. From the record before us we have no way of determining whether the *58 alleged services were for a day, a week, or longer period. Further, we have no way of determining whether the alleged services were performed under the circumstances where payment was expected. We sustain the respondent as to salary and wages. 3. Advertising and Gift Expense Petitioner's proof for expenditures claimed under this heading is completely unsatisfactory. As indicated in previous discussion, the checks, themselves, are not alone sufficient evidence to justify the allowance of a business expense. The oral evidence, presented at the hearing, to substantiate the checks points to conclusions rather than information as to the real nature of the expenditure of the money. Such testimony as "They [petitioner testifying as to certain expenditures claimed herein] are all Castleton Hotel expenses that have to do with meals obtained by me, some of my employees, or some one connected with business" does not reasonably substantiate the contentions herein advanced. Assuming that a part of the money expended was money spent for meals of petitioner while in New Castle, doubt would of course remain as to whether it could be considered a deductible expense. It may have been of a personal *59 nature. Ample testimony leads us to believe that a substantial part of this money was spent on petitioner's personal affairs. We do not think petitioner has sufficiently proved that any of the money expended through the medium of these checks constituted business expenses, but if some was expended, as contended by petitioner, we have no way to allocate the amount that represents personal and the amount that represents business. We hold for the respondent as to this matter. 4. Rentals Petitioner's claim for an allowance for the use of a portion of his personal residence as an office is denied. There was no expenditure of money on the part of petitioner with respect to this claim. Therefore, it would necessarily follow, since petitioner is on a cash basis of reporting his income and deductions for tax purposes, that there could be no deduction for such purpose. No statute or regulation permits the owner of property, on a cash basis, to deductions for rental because of the use thereof, where no expense for rental was incurred. 5. Telephone and Telegraph Expense Petitioner offered no evidence to show error on the part of the respondent as to this item. Further, there is no argument *60 on brief concerning the claim. We, therefore, consider it abandoned on the part of petitioner and hold for the respondent on this part of the issue. 6. Automobile Expense The only question raised by the respondent in the deficiency notice was directed to the amount of time the two automobiles were used in petitioner's business. The only evidence we have before us on this question is petitioner's testimony that he used the Lincoln automobile 75 per cent for business and 25 per cent for personal use and that he used the Dodge automobile "almost exclusively" for business. Petitioner claims in his tax returns that the Dodge automobile was used 100 per cent for business but considering his entire testimony we cannot so hold. The phrase "almost exclusively," used by petitioner in his testimony as regards the amount of time the Dodge was used in his business is indefinite. The fact that he used the phrase creates a doubt in our minds that he used that automobile 100 per cent for business, but, considering the entire record, we think he used the Dodge in his business more than the Lincoln. We have held that the Lincoln was used 75 per cent for business purposes and hold that the Dodge *61 was used 90 per cent for business purposes. 7. Postage Expense Petitioner's proof as to the cash expenditure for postage is lacking. Respondent has allowed all of petitioner's postage expense as evidenced by checks and, in our opinion, petitioner has not shown that respondent erred in his determination. We do not overlook the testimony on this issue, especially petitioner's testimony in which he states that postage was purchased by both check and cash. Petitioner says that he expended cash for postage, but we have practically no evidence as to the amount. We are also confronted with the testimony of Hilda Butts, one of petitioner's employees, who testified that postage purchased by cash was later reimbursed by check. This would indicate a possible duplication in some of the amounts claimed. Due to this possible duplication and the fact that petitioner has not attempted to explain the extent of the repayments of cash expenditures, we are left with no alternative than to approve the respondent's determination. 8. Notary and Attorneys' Fees The $26.50 claimed herein as notary fees is disallowed for lack of proof as to whether the expenditure was for business. The mere fact that *62 an amount was expended for notary fees does not establish a deductible item in an insurance business. The evidence before us is lacking in explaining the nature of the expenditure. We have found as a fact that petitioner paid attorney's fees of $269.98 in connection with an income tax deficiency before the United States Board of Tax Appeals. We conclude that this amount is a deductible expense. See Howard E. Cammack, 5 T.C. 467, and other cases. The remaining items regarding attorney's fees are disallowed as being paid in connection with a criminal indictment in which petitioner was found guilty. The petitioner on brief concedes that the evidence is not clear on the point and that if the amount is determined to have been paid in connection with the criminal prosecution, it is not allowable. The proof shows it to have such connection. 9. Bad Debt Section 23(k) of the Internal Revenue Code allows a deduction for a bad debt which becomes worthless during the taxable year. However, the burden is upon the taxpayer to establish the facts upon which a determination of worthlessness may be made. Petitioner argues on brief that the deduction for bad *63 debt should be allowed on the showing of worthlessness, but it is well established that such a deduction can only be taken in the year it actually becomes worthless. There is no evidence showing any value as to any of the debts alleged to be bad debts at the beginning of the taxable year. Further, the evidence fails to show that any of the debts became worthless during the taxable year. We must and do hold, therefore, that petitioner is not entitled to the bad debt deductions here considered. In general, as to the entire evidence above considered, we have been impressed not only with an unexplained failure by the petitioner to keep records tending to divide business expense from personal expenditures or to substantiate his claims, but the willingness to affirm that the claims were proper, without corroboration. "It is a wild conceit that any court of justice is bound by the mere swearing. It is swearing credibly that is to conclude its judgment." Zibbell v. Southern Pac. Co., 116 Pac. 513, quoting an old case, and citing many authorities. Here statements are contradicted by other evidence. Reviewing the petitioner's record here before us, we are unable to accord such *64 weight to his declarations as to explain the glaring deficiencies in written memoranda or proof on the matters involved. The petitioner asserts that this is not a case for application of Cohan v. Commissioner, 39 Fed. (2d) 540, and depends upon the testimony and records. We find them not only inconclusive but insufficient and unconvincing. Decision will be entered under Rule 50. Footnotes
*. Petitioner had gross income of $16 and net income of $8.25 from notary fees for the taxable year 1941.↩
*. The discrepancy in figures is not explained in record or on brief.↩