DAVID L. LOEW, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3672. Promulgated July 12, 1946.

*David Tannenbaum, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

366

**OPINION.**

HARLAN, *Judge*: On the question of the taxability of the settlor of the three trusts herein involved for the income of those trusts, the respondent submits that the petitioner did not effect a substantial change in his economic status or ownership of the property transferred in trust by the declarations of trust dated August 5, 1935. Respondent contends further that under the terms of the trust instruments the petitioner retains such broad powers of control over both the trust corpus and the income thereof that the income is taxable to the petitioner under section 22 (a) of the Internal Revenue Code and that under the terms of the trust instruments the income of the trusts might inure to the benefit of the petitioner, and it is therefore taxable to him under section 167 of the Internal Revenue Code.

The petitioner, on the other hand, contends that under the trust agreements he, as settlor, could derive no economic gain from the trusts; that there was no possibility of reverter either to him or to his estate; that the powers in the settlor to direct the accumulation of the trust income during the minority of the beneficiaries was solely for the bene-

fit of the trust; that even if the settlor, in exercising his power to select a new trustee, were to select himself as such, he would then be under the control of the law of New York and could not profit personally thereby; that the power of the settlor to direct the purchase and sale of the trust property was a power in trust not for the benefit of the settlor; and, finally, that the settlor, as the parent of the beneficiaries, could not, under the trust agreements apply any of the trust income to the support, maintenance, care, and education of settlor's minor children.

We shall first make a brief analysis of the principal authorities relied upon by the respondent.

In *Helvering* v. *Clifford*, 309 U. S. 331, the settlor declared himself trustee for certain of his own securities, the income of which was to go to the exclusive benefit of his wife. The trust was for five years, unless terminated by the death of the trustee or the beneficiary. On termination the corpus reverted to the settlor. The trustee had discretion to distribute or accumulate the income, but was to pay all accumulations to the beneficiary at the termination of the trust. The trustee had practically all powers of ownership over the trust corpus short of the power of gift and exclusive of any acts which would constitute "willful and deliberate" breach of duties. Of that trust the Court said:

The short duration of the trust, the fact that the wife was the beneficiary and the retention of control over the corpus by the respondent all lead irresistibly to the conclusion that the respondent continued to be the owner for the purpose of section 22 (a).

In *Commissioner* v. *Buck*, 120 Fed. (2d) 775, the settlor created a trust for his wife "for life with remainder to his children, retaining power to alter or amend all provisions as to distribution of income or principal," except that he could not revoke the trust, revest title to the principal in himself, or receive the income or apply it to the premiums of his own insurance. The court held that the settlor had thus retained to himself all of the indicia of ownership of the corpus and income except the power to dispose of it by will and the power to consume it himself. The court said:

The dominant factor in the family group cases [of trusts] is the extent of the donor's actual control. We conclude that the control factor is sufficiently present when the trust is of short duration as in the *Clifford* case * * * even if there is no expressed reservation of control; while if the trust is of long duration then the donor is to be regarded as the "owner" if he expressly reserves, as here, a very substantial measure of the control of the disposition of the income.

In *Stockstrom* v. *Commissioner*, 151 Fed. (2d) 353, three separate trusts were created for three adult married children and their respective offspring. The income of each trust was to be paid to the beneficiaries "in such relative amounts and at such times as the trustee shall

determine." The settlor reserved the absolute right to remove the trustee or to appoint herself trustee. The court, in commenting upon the possibilities of her power to distribute the income of the trust according to her own discretion, said:

Although economic gain "realized or realizable by the taxpayer is necessary to produce a taxable income", power to command trust income is equivalent to taxable enjoyment thereof and power to shift income from one beneficiary to another constitutes control and amounts to a realization of econmic gain.

In *Lewis A. Cushman, Jr.*, 4 T. C. 512 (six dissenting judges), there was a trust for the living children and those subsequently to be born of the settlor and his wife. Settlor reserved very extensive powers of management and the power to vote the stock of the trust corpus. This stock could have been voted for the benefit of the interests of the settlor in the corporation involved. The majority of the Tax Court held that the powers reserved brought this family trust within the provisions of the *Clifford* case and taxed the income to the settlor. However, this decision was reversed by the Circuit Court of Appeals for the Second Circuit at 153 Fed. (2d) 510. The appellate court said that the reserved powers were of a fiduciary nature, the use of which a court of equity would direct for the advantage of the beneficiary, and such powers could not legally be used for the benefit of the settlor.

In order to bring the pending case within the purview of the cases cited by respondent, it would be necessary to show that the settlor herein would derive some benefit from the four powers retained by him over the trust corpus, i. e., the power to direct the accumulation of the trust income during the minority of the beneficiaries; the power to remove the trustee and appoint a successor; the power to control the trust investments; and the power, as the parent of the beneficiaries, to receive, on behalf of the beneficiaries and to receipt for, the income arising from the trust estate.

The power to direct the accumulation of the trust income during the minority of the beneficiary could not operate either to divest the beneficiary ultimately of the income or to divert the income to some other beneficiary, because the period of accumulation is short and it is provided that at the beneficiary's majority all the accumulated income shall be paid over. Such a power does not invest the settlor with any such control over the property as to be tantamount to a taxable interest. See *Alex McCutchin*, 4 T. C. 1242.

The power to remove the trustee, even when extended to the point of permitting the settlor to appoint himself as trustee, certainly does not inure to the economic benefit of the settlor unless, as in the *Stockstrom* case, *supra*, that power would vest in the settlor as trustee the right to distribute the trust funds indiscriminately among various beneficiaries or accumulate the trust fund for an indefinite period.

The power to direct the investment of the trust fund could, of course, be abused by the settlor if he were to violate that provision of the trust agreement which provides that the trust shall be in all respects under the control of the laws of New York State. However, in the case at bar we have a settlor who is a man of considerable wealth and extensive experience in the investment of money. His qualifications to direct the investment of the trust funds could hardly be questioned. If he were to use these powers in trust for his own financial profit he would be in violation of the trust and in violation of the laws of New York, as was said by the court in *Cushman* v. *Commissioner*, 153 Fed. (2d) 510. It will be noted that the settlor in the pending case did not reserve the power to vote the stock in the corpus of the trust, as did the settlor in the *Cushman* case.

The fourth power retained by the settlor to receive, as the parent of the beneficiaries, the income from the corpus could only be of benefit to the settlor if he should illegally convert the same to his own benefit.

The inevitable conclusion from the above is that none of the provisions of the trust agreement involved herein bring this trust within the provisions of the law as set forth in the *Clifford* case above or the later cases which have followed the *Clifford* doctrine.

The respondent also contends that this money so received by the petitioner might be used for the education, care, maintenance, and support of the beneficiaries and thus might inure to the benefit of the settlor. This same contention was raised in the case of *Lillian M. Newman*, 1 T. C. 921, and was rejected in that case. The Court based the rejection on the following statement:

The rule in that state [New York] appears clearly to be that the primary duty to support and educate minor children rests upon the father * * *. And as long as the father is able financially to carry on this burden the child's separate estate and income may not be used for its support.

In California, the state of residence of the settlor and the beneficiaries during the taxable years, a similar decision is found in *In re Keck*, 100 Cal. App. 513; 280 Pac. Decisions 387, wherein the court said:

Parents are primarily liable for the support of their children (Civil Code, section 196) and the assets of the children may not be reserved to or for that purpose so long as the parents are able adequately to perform this duty (Code of Civil Procedure, section 1757).

Section 1757 of the Code of Civil Procedure, referred to in the above quotation, was repealed by section 1700 of the California Probate Code in 1933, so that under the California law existing during the taxable years involved herein the consent of the probate court is apparently required before even an indigent parent can expend the income of his child for the child's support.

The evidence herein is clear, furthermore, that petitioner is a man

of considerable means and, under the California law as declared in *Ex parte Carboni*, 116 Pac. 453; 46 Cal. App. (2d) 605, petitioner could not legally use the income of his minor children for their support. The court, in *In re Carboni*, said:

The law is well settled that the primary duty to support a minor rests upon his parents and that the estate of the minor can only be resorted to where the parents are unable to fulfill the obligation.

Respondent cites the case of *Helvering* v. *Stuart*, 317 U. S. 154, wherein the trust agreement made a provision that the trustees without any interest adverse to the grantor should devote a portion of the trust income for the care, maintenance, and education of the minor beneficiary and the Court held that, inasmuch as that authority was included in the trust agreement, it must be assumed that the entire trust income was authorized to be spent for the relief of the settlor-parent's obligation to support his child.[1] The obvious distinction of the *Stuart* case from the case at bar is that no such provision for the support, education, and care of minor beneficiaries is included in Loew's trust agreement. This question is only before the Court because the respondent contends that, since the parent could receipt for the trust funds belonging to the minor beneficiaries, the parent might divert that fund to his own use. This situation is far from the situation of the *Stuart* case.

It is therefore held that the income of the trust is not taxable to the petitioner under the doctrine of the *Clifford* case or under the provisions of section 167 of the code as amended.

The second issue involves the disallowance of amounts paid to Haskin & Sells and Webster & Atz. The amounts paid to Haskin & Sells were for services rendered to petitioner in connection with the preparation of his income tax returns. The amounts paid to Webster & Atz were for keeping petitioner's books and recording therein the income from approximately $1,000,000 in stocks and securities owned by him, depositing dividends received in petitioner's bank account, and, during the latter part of 1938, when petitioner left the country for a period of four months, taking care of his office and his tax returns. In support of his determination that the amounts paid to these two firms do not constitute allowable deductions, the respondent cites and relies upon *R. C. Coffey*, 1 T. C. 570; affd., 141 Fed. (2d) 204; *James Lewis Caldwell McFaddin*, 2 T. C. 395; *Aldus C. Higgins*, 2 T. C. 948; affd., 143 Fed. (2d) 654; *Stoddard* v. *Commissioner*, 141 Fed. (2d) 76; and *Hord* v. *Commissioner*, 143 Fed. (2d) 73. In those cases it was held that the cost of tax advice and of the preparation of income tax returns was not deductible as a nontrade or nonbusiness expense under

---

[1] This case was decided prior to the 1943 amendment to section 167, I. R. C.

the provisions of section 23 (a) (2) of the code.[2] Since they were decided, the Supreme Court of the United States, in *Bingham Trust* v. *Commissioner*, 325 U. S. 365, considered the question of whether expenses incurred by trustees in contesting an income tax deficiency assessment were deductible under section 23 (a) (2), *supra*. In holding that they were, the Court pointed out that this section does not restrict deductions to those litigation expenses which alone produce income, and that expenses are deductible "when they are directly connected with or proximately result from the enterprise—the management of property held for production of income."

Since the decision in the *Bingham* case was rendered this Court has held to be deductible expenditures for legal fees incurred in connection with securing a refund of income taxes, *Howard E. Cammack*, 5 T. C. 467; expenditures for legal fees and expenses paid for services rendered in connection with litigation over income taxes for prior years, *Herbert Marshall*, 5 T. C. 1032; expenditures for legal advice related to an ascertainment of proper tax liability and for attorney fees in connection with litigation over personal holding company surtax deficiencies, *Philip D. Armour*, 6 T. C. 359; and expenditures to accountants for services performed in connection with conferences with representatives of the Bureau of Internal Revenue relative to taxpayer's liability for tax and in handling a dispute involving a state emergency tax, *William Heyman*, 6 T. C. 799.

Our best judgment is that the rationale of the *Bingham* decision is equally applicable to the services rendered by Haskin & Sells and Webster & Atz. The preparation of income tax returns and other services rendered by these two firms were "directly connected with or proximately result from the enterprise—the management of property held for production of income."

It may not be amiss to point out in this connection that prior to May 14, 1946, the respondent's Regulations 103, as amended (see par. 11, T. D. 5196, approved Dec. 8, 1942, 1942–2 C. B. 96), covering the deductibility of nontrade and nonbusiness expenses, provided that "Expenditures incurred for the purpose of preparing tax returns (except to the extent such returns relate to taxes on property held for the production of income) * * * are not deductible expenses under this section * * *." Treasury Decision 5513, approved May

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—* * *

* * * * * * *

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

[This section was made retroactive by the provisions of section 121 (e) of the Revenue Act of 1942.]

14, 1946, provides for the amendment of the regulations by striking the above quoted sentence and inserting in lieu thereof the following:

Expenses paid or incurred by an individual in the determination of liability for taxes upon his income are deductible. If property is held by an individual for the production of income, amounts expended in determining a property tax imposed with respect to such property during the period when so held are deductible. * * *

We conclude that the amounts paid by petitioner to the two accounting firms during the taxable years are allowable deductions under section 23 (a) (2), *supra*.

The remaining issue relates to the failure of petitioner to include in his income tax return for 1939 any part of the $1,500 received by him in that year from the Brooks-Rose Corporation for services rendered during the years 1935, 1936, and 1937. An examination of the briefs filed by the respective parties discloses that they are in agreement that that portion of the $1,500 which petitioner was paid for services rendered prior to November 1, 1935, when petitioner was a resident of the State of New York, is taxable to him as his separate income, and that portion paid for services rendered after that date, when he was a resident of the State of California, is taxable as community income. Whether we follow the respondent's method of computation, that ten-twelfths of $500, the compensation for 1935, represents separate income and the balance community income, or the petitioner's method, that ten thirty-sixths of $1,500, the compensation for all three years, represents separate income and the balance twenty-six thirty-sixths community income, the result is the same. We therefore hold that $416.66 of the $1,500 received in 1939 is taxable as separate income, and the remainder, $1,083.34, as community income.

*Decision will be entered under Rule 50.*