Fritz L. Meeske v. Commissioner.
Meeske v. Commissioner
Docket No. 5930.
United States Tax Court
1946 Tax Ct. Memo LEXIS 39; 5 T.C.M. (CCH) 962; T.C.M. (RIA) 46261; November 5, 1946
*39 Petitioner was grantor and co-trustee of a trust created for the benefit of his wife and his three children. As trustee, he had certain powers of management, including the right to vote stocks in the trust corpus, the control over investments, the power to remove the corporate trustee and to substitute another corporate trustee and the right to apply, through their lawful guardian, the income and, if needed, sufficient of the corpus, to the education, support and maintenance of the beneficiaries. Held, no part of the income from such trust was taxable to the petitioner under the provisions of section 22 (a) of the Internal Revenue Code. Donald J. Marran, Esq., 25 Broadway, New York 4, N. Y., for the petitioner. M. S. Huffaker, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $10,149.71 in the petitioner's income tax for the year 1941. The single issue is whether or not the petitioner is taxable upon the income from four trusts created by him in one instrument on December 24, 1935, for the benefit of his wife and his three children. Findings of Fact Certain facts were stipulated or admitted in the pleadings. Those material to the issue are as follows: The petitioner is an individual residing in Forest Park, Mona Lake, Muskegon, Michigan. He filed his income tax return for the year 1941 with the collector of internal revenue for the district of Michigan. On December 24, 1935, he executed a trust instrument granting and conveying to the Hackley Union National Bank of Muskegon, Michigan, (hereinafter called Hackley Union) and to himself, as cotrustees, 500 shares of the common stock of the Anaconda Wire and Cable Company as the corpus *41 of each of four trusts. The trust in which Edna T. Meeske, wife of the petitioner, was beneficiary, provided that the net income from the corpus should be paid to the beneficiary at least quarterly during her life and upon her death the corpus should be divided among her children, per stirpes, and each share be added to the child's trust and administered according to its terms. The share of a deceased child was to be paid to his issue absolutely per stirpes. If the deceased child should have no issue, the fund was to pass as provided in his will, and in the absence of such provision, then as determined by the laws of Michigan. The trust for the three children, Philip Fritz Meeske, Joan L. Meeske and Donn Strickland Meeske, provided that the net income might be paid to the guardian of such child for his education, maintenance and support until he should become 21 years of age. All net income not so expended should be invested in the manner provided for the corpus of the trust. After each child should become 21 years old, the net income was to be paid to him at least quarterly until he should become 35 years of age, whereupon one-half of the principal of the trust was to be paid *42 to him and the net income of the remainder paid to him at least quarterly during his life. Upon the death of a child, the trust created for his benefit was to cease and the corpus and undistributed income would pass pursuant to the provisions of his will; in default of such provisions, then according to the intestate laws of Michigan. The trust provided further that the trustees might invade the corpus to pay emergent demands, such as for educational, health or maintenance purposes. The trust contained the following provision: SECOND: IRREVOCABILITY: The trusts hereby created are declared to be irrevocable and shall not be set aside during the period as herein stipulated for their duration; but notwithstanding the provisions in this Indenture contained, this instrument and any and singular the trusts created hereby, the Donor may at any time and from time to time, alter or amend the manner of distribution to the beneficiary or beneficiaries by an instrument in writing, executed, acknowledged and delivered by the Donor to the Trustees during his lifetime only, and the terms thereof accepted by the Trustees, provided, however, that the beneficiary of each respective trust, shall *43 in no way be deprived of the net income of his or her trust fund nor of the ultimate distribution of the trust fund by the power of appointment heretofore in this instrument granted said beneficiary. The Donor further reserves the right at any time or from time to time to add to and increase the principal of any or all of the trusts hereby created by transfer to the Trustees of additional property to be held by them hereunder. The trustees were given broad powers of management. The grantor reserved all rights to resign as trustee and designate his successor, and to remove Hackley Union as the corporate trustee and appoint a successor corporate trustee having qualifications as set forth in the trust instrument. Further provisions to the same end were made in the case of the death of the grantor. The following powers were also included in the trust: THIRD: POWERS OF TRUSTEES: (a) Management and Investment: The Trustees are hereby authorized and empowered to retain, subject to the provisions hereof, any and all of the property and securities hereinbefore described, or any property and securities obtained by investment or reinvesting, without liability for decrease in the value *44 of such property or securities, but may, as hereinbefore provided, sell or exchange at any time any of such property or securities, and invest or reinvest the proceeds thereof; provided, however, that during the life of the Individual Trustee, Fritz L. Meeske, the power and authority granted to the Trustees by this paragraph shall only be exercised by, or with the written consent of, said Individual Trustee. Investments or reinvestments made pursuant to the provisions of this Article THIRD may be made in any securities or other property regardless of whether or not such securities or property are such as the laws of the State of Michigan, the National Bank Act, or the rules and regulations of the National Banking Department governing trusteeships authorize for the investment of trust funds. In case real property shall in any manner be or become part of the trust funds created hereby, the Trustees are directed to sell the same as soon as practicable, and convert the same into moneys or interest bearing or income producing securities or personal properties, and all the properties comprising the trust funds shall at all times be considered and treated as personal properties. * * * *45 *
(d) Control of Investments. The Trustees are authorized and empowered to vote in person or by proxy upon all stocks or other securities held by them; * * *. They were given further detailed powers over the acquisition, treatment and disposition of securities such as are possessed by individual owners; all, however, to be exercised by or with the written consent of the individual trustee. Statements were to be made semi-annually to the grantor setting forth the receipts and disbursements of the trustees and an inventory of the trust property. The trustees were relieved from any liability except that due to willful or wrongful acts or omissions. On December 24, 1935, Hackley Union accepted the duties and obligations imposed by the instrument dated December 24, 1935, and continued so to act during the taxable year. The petitioner, Fritz L. Meeske, transferred the securities referred to in the instrument dated December 24, 1935, to Hackley Union and petitioner as co-trustees and they accepted the securities under the trust. Hackley Union thereafter received the dividends on the trust property and after deducting its expenditures, the balance remaining was either distributed *46 or accumulated in accordance with the terms of the trust indenture and in the following amounts: Trust
Amount
Edna T. Meeske
$3,871.48
Donn S. Meeske
4,010.15
Philip Meeske
4,022.82
Joan Meeske
3,999.49
The income of the petitioner, Fritz L. Meeske, for the year ended December 31, 1941, as disclosed in his return as filed, was approximately $60,000, upon which amount he duly paid a tax thereon in the sum of approximately $27,000. Each of the beneficiaries or the fiduciary reported the income derived from the trust in separate returns and paid the tax thereon for the year 1941. Certificates of overassessment were duly issued by the Commissioner and each beneficiary has filed a claim for refund of the tax so paid. At the time the trust indenture was executed the children of the petitioner, Fritz L. Meeske, were Philip, age 13; Joan, age 8; and Donn, age 5. In 1941 none of the trust income was used for the support, maintenance or education of these children and none of the trust income was used for the purpose of defraying living expenses of the petitioner's household. In his notice of deficiency the Commissioner held that the income of the four trusts *47 under consideration, amounting to $15,903.94, was taxable to the petitioner under the provisions of section 22 (a), Internal Revenue Code. From the record we find the following additional facts: On February 6, 1941, paragraphs FIRST (c) and SECOND of the trust indenture of December 24, 1935, were amended to read as follows: FIRST: (c) DECEASE OF BENEFICIARY: In the event of the decease of any of said children of the Donor during the existence of the trust hereby created for his or her benefit, the trust hereby created for such child shall thereupon cease and determine and the then remaining principal and undistributed income, if any, of such trust shall go and be disposed of as such child may by his or her last will and testament appoint, and in default of such appointment, the same shall go to those persons entitled, under the laws of the State of Michigan then in force, to take the personal estate of such child, in the event of his or her death without will and in such proportion to each as said intestate laws may determine. Provided, however, that I hereby irrevocably renounce and waive any possible interest or estate in and to the Trusts hereby created *48 for my said children to which I might become entitled in the event that any one of my said children shall pre-decease me and be in default of exercising his or her right of appointment to dispose of such trust estate by last will and testament. SECOND: IRREVOCABILITY: The trusts hereby created are declared to be irrevocable and shall not be set aside during the period as herein stipulated for their duration. The Donor reserves the right at any time or from time to time to add to and increase the principal of any or all of the trusts hereby created by transfer to the Trustees of additional property to be held by them hereunder. The trust instrument was further amended by providing that the grantor irrevocably renounced and waived all possible interest or estate in the trusts to which he might become entitled upon the death of any of his children without having exercised the right of appointment by will. The inclusion in the trust instrument of the reservation of the right of the grantor to direct the co-trustee in the sales and purchases of securities was inserted therein at the insistence of Hackley Union by reason of the fact that the right of a corporate trustee to hold common *49 stocks had been adjudicated only in the case of Buhl's Estate, 211 Mich. 124. The petitioner consulted with Hackley Union on only two occasions as to the investment of accumulated income and he never directed the bank how to vote the corporate stocks in the trust corpus. Opinion VAN FOSSAN, Judge: The respondent seeks to tax the petitioner under the provisions of section 22 (a) of the Internal Revenue Code, pursuant to the principle established by Helvering v. Clifford, 309 U.S. 331. He argues that the basic question is whether or not, after the trust was established, the grantor should still be treated as the owner of the corpus and he asserts that the answer to that question is to be found in "an analysis of the terms of the trust and all circumstances attendant upon its creation and operation." ( Helvering v. Clifford, supra.) The petitioner agrees with the respondent's statement of the basic fact but contends that the trust was neither formed nor operated for his economic benefit. He maintains that he parted with his property forever and that his powers and management under the trust can not constitute the ownership *50 which would reserve to him an economic interest taxable under section 22(a). The controversy presented in the case at bar has arisen in many cases since the decision in the Clifford case. As both parties concede, the decision must rest on both the terms of the trust and all circumstances attendant upon its creation and operation. The trust instrument, as amended, excluded the petitioner from all direct rights to both the corpus of, and the income from, the trust. The respondent does not contend otherwise. Similarly, the respondent makes no contention that any of the funds were diverted by the trustee from their normal channels of distribution to the beneficiaries and he stipulated that none of the trust income was used for the support, maintenance, or education of the children or for the purpose of defraying living expenses of petitioner's household. He rests his entire case on the "powers and controls retained by the petitioner * * *, namely, broad and unrestricted control over investments, the right to apply principal and income in satisfaction of his legal obligations, power to vote trusteed stock, and the power to remove the Corporate Trustee at will and appoint another." It *51 should be noted that of the above-mentioned powers and rights, only the right to remove the corporate trustee was reserved to the petitioner as grantor, all others being vested in the petitioner as a trustee. In addition to the Clifford case, the respondent relies most heavily on Lewis A. Cushman, Jr., 4 T.C. 512, which, he says, "is analogous in most material respects." It is to be observed at this point that the Cushman case was reversed by the Circuit Court of Appeals for the Second Circuit in Cushman v. Commissioner, 153 Fed. (2d) 510. Addressing ourselves directly to respondent's contention, in Alma M. Myer, 6 T.C. 77, a case in which the grantor-trustee held wider management powers than those in the trust now before us, we stated that "we have uniformly held that management powers through which no economic gain may be derived are not sufficient to justify holding the settlor-trustee chargeable with the income." (See cases there cited.) We perceive no economic gain whatever which the petitioner might derive through the exercise of the powers granted by the trust instrument. His control over investments and right to vote the stock of the *52 trust were granted to him as trustee. The grantor-trustee in the Myer case had similar powers. The petitioner-trustee could apply income and principal, if needed, to the support and maintenance of the children. However, no money was so expended in the taxable year and no trust income was used for the petitioner's household expenses. The distributions made to the beneficiaries or to their fiduciary were reported as their income and the tax paid thereon. The petitioner paid all expenses necessary to support, maintain and educate his children and thus was not relieved of any legal obligation so to do. (Cf. section 167, Internal Revenue Code, as amended.) The petitioner could remove the corporate trustee and appoint his successor, also a corporation. No personal benefit could conceivably inure to him by reason of this power. David L. Loew, 7 T.C. 363. The powers reserved by the petitioner were of the character normally conferred upon a trustee to enable him properly to direct and manage the trust corpus for the benefit and in the interests of the beneficiaries. Any transgression of his official duties or a misuse of his powers for his own advantage *53 would violate his trust and would subject him to action in an appropriate court. Cushman v. Commissioner, supra; David L. Loew, supra. We observe that in the conduct of the trust's business the petitioner, as trustee, refrained from consulting with the officials of Hackley Union except twice and then because of situations arising from accumulated income and the need to invest it. He never directed the corporate trustee how to vote the stocks contained in trust corpus. These factors are important circumstances, "attendant upon the operation of the trust" and tend to confirm the petitioner's lack of economic interest in the trust income or benefit therefrom. We are of the opinion that the petitioner is not taxable upon the income from the trust under consideration, and so hold. Decision will be entered under Rule 50.