NATE S. SHAPERO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6181.   Promulgated January 22, 1947.

*Thomas G. Long, Esq.*, and *Frank E. Seidman, C. P. A.*, for the petitioner.

*M. S. Huffaker, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: The question for our determination is whether or not the petitioner is taxable as an individual upon the income of the three trusts created by him in 1934 for the benefit of his wife and minor children. The respondent has determined that the powers over the trusts retained by the petitioner as donor-trustee require the taxation to him of the trust income under section 22 (a) of the Internal Revenue Code.

It has often been observed that each case of this character rests primarily on its own facts. The facts here indicate to us that petitioner's economic position was essentially the same after the trusts were created as it was before. We therefore believe that as to each trust this case is within the ambit of *Clifford* v. *Helvering*, 309 U. S. 331, and respondent accordingly must be sustained.

The significance of petitioner's gifts in trust can be properly determined only it it is borne in mind that he and the beneficiaries, two of whom were minors, are all and the only members of an intimate family group, he being the head of that group and annually receiving income in excess of his own normal needs. The income in question remains in his family and the immediate question presented is whether the allocation of such income to family members other than himself effected any substantial change in petitioner's rights of enjoyment of the property forming the corpora of the trusts. As has been repeatedly said, the issue will be determined not by whether petitioner retained some particular right over the property, but whether the bundle, or aggregate, of his retained rights plus the indirect benefits from the operation of the trusts constitute "a fair equivalent of what he previously had."

We think it would be difficult to vest more complete administrative control in a trustee than that which petitioner expressly retained to himself over the corpus of each trust. He held as trustee "the fullest possible latitude in making investments," the discretionary right to manage all the trust properties, the unlimited power to vote all trust stocks or to direct the manner in which they should be voted, "absolute and uncontrolled discretion" to determine the expediency and propriety of selling, mortgaging, or otherwise disposing of all trust property, "at such time or times and in such manner, either public or private, and upon such terms" as he thought fit, the right to distribute in kind trust securities selected by him and to make a "final and conclusive" determination of the proportions and prices at which such distributions should be made, the privilege of joining with security holders in voting trusts, reorganizations, and refinancing arrangements and of despositing trust stocks for that purpose, the "complete and absolute power * * * to direct the payment and conveyance * * * of any part or all of the principal of the trust property * * * , as well as any accumulated income therefrom, to the then living beneficiary or beneficiaries thereof, in such proportions [as petitioner] may think proper," and "the fullest and most complete powers and authority which it is possible for Grantor to give in respect of all sales, investments, expenditures, management and control of the trust property and estate; * * * " It is clear that under the trust instruments the intended and vested powers of the corporate trustee were

limited to the perfunctory duties of property custodian and book-keeper. To the extent that Detroit Trust Co. did more than that in the management of the trusts, it acted at the grace of petitioner as individual trustee and was at all time subject to his control. Petitioner's complete control over the trust company was assured by his retention in himself, *as grantor*, of the power to remove the corporate trustee and to fill or leave open the vacancy thus created. Under these circumstances, the corporate trustee's conduct in the operation of the trust is not indicative of divestiture by petitioner of any control over the trust corpus. *Louis Stockstrom et al., Trustees*, 4 T. C. 5; affd., 151 Fed. (2d) 353.

It may be said that, however extensive are such enumerated powers over property, they alone, particularly when exercisable as trustee and thus subject to the control of chancery, are not equivalent to property ownership under the *Clifford* doctrine. We have indeed said that in these cases the possibility of economic benefit to the holder of such powers is indispensable to a determination of the taxability of the income from the property to him under section 22 (a). See *David L. Loew*, 7 T. C. 363, and *Alma M. Myer*, 6 T. C. 77.

Petitioner's trustee powers far exceeded those traditionally exercisable at chancery, however, and in their exercise petitioner had by exculpatory clauses and by reservations of broad discretion removed himself to the fullest extent possible under the law from the control of the chancellor's conscience and the application of the sanctions of equity. In general, the beneficiaries could require of him as trustee only good faith, a limitation the substance of which must be viewed in the light of "the normal consequence of family solidarity." In addition, petitioner reserved to himself, as grantor, a lifetime power to alter or amend the trust agreements in whole or in part, which might be exercised to avoid threatened interference with his dominance of the trusts by shifting the relevant managerial powers from himself as trustee to himself as grantor. Compare the reserved powers of amendment in *Kohnstamm* v. *Pedrick*, 153 Fed. (2d) 506, and in *Cory* v. *Commissioner*, 126 Fed. (2d) 689.

Petitioner points out that the power to amend expressly could not be used to revoke the trusts or "to change or impair the right of enjoyment of any beneficiary." Furthermore, by explicit limitation, petitioner did "not have the power at any time during the continuance of the trusts * * * to revest in himself title to any part of the corpus or income * * *." Nor do the trust instruments provide for reversion of corpus or accumulations to the grantor. As indicated many times, however, the ability of the grantor to recover title to principal or income and his ability to dispose of either by will are neither separately nor together prerequisites of the application of

the *Clifford* rule. See *Ellis H. Warren*, 45 B. T. A. 379; affd., 133 Fed. (2d) 312, and *Commissioner* v. *Buck*, 120 Fed. (2d) 775. Where a grantor-trustee's control over corpus or income during the taxable year is substantially equivalent to that of a title holder, lack of title as an individual is of "little or no significance in household relationships."

As to the benefits derivable by petitioner from the trusteed property, we note at once that, by the exercise of his settlor and trustee powers, he remained after the creation of the trusts fully able to enjoy the "challenge and zest of employing the [property] to beget more property and * * * to vindicate his business skill * * *." He continued to know and use the "pleasure and power of regulating, providing for or supplementing the wants and conveniences of the members of his family in their attained station * * *." Cf. *Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491, 494,[1] modifying 3 T. C. 255, and *Funsten* v. *Commissioner*, 148 Fed. (2d) 805.

Petitioner contends, however, that these benefits and others flowing from administrative control are not sufficient to invoke the *Clifford* rule, and he urges that as to each of these trusts his retained control over distribution of corpus and income was usable exclusively for the advantage of the beneficiaries and not for himself. He appears to rely principally on *J. M. Leonard*, 4 T. C. 1271; *Donald S. Black*, 5 T. C. 759, and decisions following those cases.

Petitioner retained a broad discretionary power over distribution of corpus by inserting in each trust instrument the provision as follows:

13. The individual Trustee during his lifetime, and thereafter the successor individual Trustee, notwithstanding anything hereinbefore contained to the contrary, shall have full, complete and absolute power and authority to direct the payment and conveyance, forthwith or otherwise, of any part or all of the principal of the trust property and estate, as well as any accumulated income therefrom, to the then living beneficiary or beneficiaries thereof, in such proportions as the individual Trustee or the successor individual Trustee may think proper.

This is in the least a reservation of power to terminate the trust at will, or to distribute any portion of the corpus that petitioner should think desirable. Respondent points out that in deciding adversely to the taxpayer in *Lorenz Iversen*, 3 T. C. 756, we commented upon such a power as follows:

The plain meaning of these provisions is that the petitioner could have terminated the trusts at any time. It is uncertain whether in case of such termination of the trust in whole or in part the trustee would have been required to pay over to the beneficiary all or any part of the corpus of the trust which was thus terminated. It is plain, we think, that a power to terminate a trust at

---

[1] All subsequent references to "the *Stockstrom*" decisions are to this case rather than to its companion, which is cited previously in this opinion.

will adds materially to the "bundle of rights" under which a grantor's liability under section 22 (a) is imposed.

Referring to the second sentence of the quotation, petitioner argues that the *Iversen* case is distinguishable because here it is certain that the use of the power to terminate would merely accelerate the enjoyment of the property by the beneficiaries.

We think, however, that the last sentence of the quotation expresses a valid general principle, independent of the applicability of the preceding sentence to the particular situation. Whatever doubt there may have been on the score previously [2] was surely dispelled by the words of the Supreme Court in *Commissioner* v. *Estate of Holmes*, 326 U. S. 480.[3] In discussing the estate tax significance of a reserved power to terminate a trust and distribute corpus and accumulations to the then beneficiaries, the Court said:

> It seems obvious that one who has the power to terminate contingencies upon which the right of enjoyment is staked, so as to make certain that a beneficiary will have it who may never come into it if the power is not exercised, has power which affects not only the time of enjoyment but also the person or persons who may enjoy the donation. More therefore is involved than mere acceleration of the time of enjoyment. The very right of enjoyment is affected, the difference dependent upon the grantor's power being between present substantial benefit and the mere prospect or possibility, even the probability, that one may have it at some uncertain future time or perhaps not at all. A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of * * * control * * *

So commenting, the Supreme Court held that such a discretionary power made the beneficiaries' enjoyment of the transferred property subject to change by the settlor through his exercise of a power "to alter, amend or revoke." That decision and the reasoning upon which it was based make it clear to us that this reserved control over the disposition of corpus has importance here in terms of petitioner's economic position after the creation of the trusts. Though he had divested himself of title to the trusteed property, his retained command over it was such that all of it was still to him a source of economic power and control over the named and potential beneficiaries. By the grants in trust he confined himself to changing the enjoyment of the property within a limited group, but he remained able to employ the bargaining power which the property engendered. Certainly, there can be no doubt that a retained power to change the enjoyment of trusteed property is one of the bundle of rights of ownership which invokes the *Clifford* rule. See *Commissioner* v. *Buck*, *supra*, and *Stockstrom* v. *Commissioner*, *supra*.

---

[2] See concurring opinion in *Iversen*, at 3 T. C. 774.

[3] 326 U. S. 480; rehearing denied, 327 U. S. 813, reversing 148 Fed. (2d) 740, which affirmed 3 T. C. 571. *But, compare Kohnstamm* v. *Pedrick*, *supra*, decided prior to the *Holmes* case.

In taxing to the grantor the income of long term irrevocable trusts we have frequently pointed to retained power to control the disposition of income. In the *Stockstrom* case, the Circuit Court of Appeals for the Eighth Circuit pointed out that our decision taxing the income to the grantor had been rested upon the combination of control over corpus and the power to dispose of income, and it declined to consider whether either ground singly was such as might create taxability to the settlor. As to the latter power we had said:

It may be that in cases of long term trusts the settlor is to be taxed on the trust income only if in addition to broad administrative powers over the trust corpus there are also powers over the distribution of the income. * * * His powers over the distribution of the trust income were not as complete as in the case of *Commissioner* v. *Buck*, 120 Fed. (2d) 775, but were nevertheless substantial. Here, as in *Ellis H. Warren*, 45 B. T. A. 379; affd., 133 Fed. (2d) 312, "he was not required to distribute any part of the income to any of the beneficiaries during his lifetime," and in the trusts created for his children petitioner, as trustee, had the right to pay the income either to his child or his grandchildren. In all of the trusts the immediate payment of any income to any beneficiary was in his sole discretion. While it is true that any trust income not paid out was to be accumulated in the trust, this retention of the power over the purse strings with regard to the members of his immediate family who were beneficiaries would warrant our conclusion that "the direct satisfaction of *paterfamilias* are thus virtually undiminished * * *." * * * When this power of the settlor-trustee over the distribution of the trust income is combined with extraordinarily broad administrative powers over the trust corpus, we can not escape the conclusion that the doctrine of *Helvering* v. *Clifford* is applicable and the incomes of the trust are taxable to the settlor.

The grantor in that case was able, by accumulating income, to favor the remainderman over the primary beneficiary, a distribution power perhaps less broad than that in the *Buck* case, where the grantor-trustee could shift income between primary beneficiaries. The significance of these particular powers is in each case the same, i. e., that the petitioner retained "a power over the purse strings" and thus could still, during his lifetime, grant the income to the income beneficiaries or withhold it from them.

It seems obvious that discretionary power of equivalent substance was reserved by petitioner as to the trust for his wife. The trustees were authorized to distribute income to her during petitioner's lifetime only at such times and in such amounts as he should direct. This continued command of income, through lifetime control of the time of distribution, coupled with the above mentioned powers over corpus, brings the trust for the wife within the rule of the *Warren* and *Stockstrom* cases.

The income of each child's trust was, during minority, to be accumulated and added to corpus, but (1) the trustees were authorized to make distribution "out of such accumulations or the corpus" as

might be needed by the child for maintenance and education, and (2) petitioner, as individual trustee, could during his lifetime direct the distribution of any accumulated income in any way except to fulfill his legal obligations as parent. After the child reached 21 years of age the income was to be distributed, unless petitioner during his lifetime should otherwise direct. Under these provisions petitioner, as did the grantor in the *Stockstrom* case, had discretionary control over the immediate payment of any income. As before the creation of the trusts, he held the purse strings and could grant to or withhold from each child. None of the income was beyond his immediate command in this respect and through the exercise of this dominion he could enjoy, virtually undiminished, "the direct satisfaction of *paterfamilias*."

The distinction between the extent of petitioner's powers over distribution of income and those of the grantor-trustee in the *Stockstrom* case is that petitioner, even if he survived each child, might not be able wholly to deprive him as primary beneficiary of any of the income. In *Leslie H. Green*, 7 T. C. 263, we held that this same distinction did not bring that case within the rule of *Alma M. Myer*, *supra*, where, on the authority of *J. M. Leonard*, *supra*, and cases cited therein, we denied the taxability of trust income to the settlor-trustee. Moreover, it may be noted that at the time Stockstrom created the trusts for his grandchildren he had a life expectancy of only six years. Thus, as a practical matter, he could accumulate current income and thereby control its disposition to the grandchildren during only a small portion of the life of the trusts. Moreover, the successor trustees might in their "absolute discretion" determine that the beneficiaries had the requisite need for funds in excess of trust income and accordingly distribute to them what Stockstrom had accumulated.

Petitioner could, as to each trust, cause current income to be withheld each and every year until the beneficiary reached the age of 45, when the trust terminated. Distribution of accumulated income which had been added to corpus was subject to his discretion until the specified corpus distributions began at the beneficiary's attainment of 30 years of age. When the trusts were created in 1934 petitioner's son was 8 years old and his daughter was 4, and at the end of the calendar year 1941 they were 15 and 11, respectively. Thus, petitioner clearly commanded the income during the taxable years 1940 and 1941, and in amending the trust instruments in 1936 he reserved to himself control over disposition of current trust income to the son for 35 years thereafter and to the daughter for 39 years, that is, for the duration of each trust. The date of petitioner's birth, which is not in the record, might indicate that for practical purposes a power of such duration was equivalent to one for the grantor's lifetime. We do not believe that for practical purposes the slight difference be-

tween the control over the income retained by petitioner and that reserved by Stockstrom is in itself of controlling significance.

· Looking at both petitioner's control over the distribution of corpus and his discretionary power over the disposition of current income, it is clear that until each beneficiary reached the age of 30 years he was, on the record, as dependent economically upon petitioner for need and pleasure as he had been before the creation of the trusts. The beneficiaries' realization of financial benefit on their trust interest through pledge or transfer was prohibited by spendthrift provisions in each trust instrument. Their unqualified *right* to acquire anything from the trusts was dependent upon their reaching 30 years of age. Thus, petitioner, by the exercise of his discretionary powers, could not only deprive them of all income as it was earned, but could substantially decrease the likelihood of their receipt of any accumulations or corpus by declining to authorize any distributions. Though he could not of certainty vest the accumulated income or corpus in remaindermen, he retained a power to exact of the primary beneficiaries full compliance with a vital condition to their right to realize anything, i. e., that they live the specified number of years. None of the income or corpus of the children's trusts has in fact been distributed. On the other hand, from the day the trusts were created, petitioner could at choice authorize and direct the immediate distribution of current income and/or accumulations and corpus. The quoted remarks of the Supreme Court in *Commissioner* v. *Estate of Holmes*, *supra*, are as appropriate in connection with the substance of petitioner's control over income as they are with respect to his discretionary power to distribute corpus. Petitioner's retained control over the disposition of the trusteed property and its proceeds, though reserved in terms of time and though exercisable by veto, is of such significance in the family situation as to persuade us that by its retention petitioner made possible his continued enjoyment of substantial economic benefit from the trust assets. As in *Edison* v. *Commissioner*, 148 Fed. (2d) 810, he has practically "retained the power to regulate the purse-strings for his children in relation to the property the same as before" the creation of the trusts. In view of his discretion in connection with the children's rights of enjoyment under the trust instruments as here before us, it is unnecessary to the application of the *Clifford* doctrine that his retained power of amendment expressly be usable to change those rights.

Whether a settlor-trustee's power to distribute or accumulate income for some specified number of years, coupled with broad powers to manage the corpus, may be sufficient in itself to invoke the *Clifford* rule, we need not here determine. See *Leslie H. Green*, *supra; M. Friedman*, 7 T. C. 54; and *Lillian R. Chertoff*, 6 T. C. 266, and compare

with *Hall* v. *Commissioner*, 150 Fed. (2d) 304, reversing 4 T. C. 506; *David L. Loew, supra; W. L. Taylor*, 6 T. C. 201, and *Alma M. Myer, supra*. We do think that the retention of such a power may and did here make possible the settlor's continued economic benefit from the income of the property formally dedicated to the trust. As indicated above, petitioner also continued able to derive from the property other benefits which are "noteworthy indicia of taxability" under the *Stockstrom* decision. Still others are significant.

In creating the trusts petitioner retained the power to vote all stock held or later acquired by them. During the taxable years each of the trusts held a substantial number of shares of stock of Cunningham and together they owned 23,884 such shares, or 21.75 per cent of those outstanding. These shares were 22.90 per cent of all shares voted in 1940 and 28.82 per cent in 1941, and they, plus others voted by petitioner's interests in those years, were 60.64 per cent and 59.85 per cent, respectively, of the total voted. Thus, it was through the trusts that petitioner had control of more than 50 per cent of the voted stock. Petitioner was the president and a director of the corporation. He received $44,999.92 salary and other compensation in 1940, and $59,-999.92 in 1941. Though the wife's trust sold in 1937 over half of its original holding of 20,000 shares of Cunningham stock, it retained 9,700 shares through the taxable years. Each of the children's trusts was created with 672 such shares, and later through contribution or purchases its holdings were increased to 7,092 shares during 1940 and 1941. When we consider these facts in connection with petitioner's trustee investment, sale, and management powers over the trusts' corpora, we can not escape the conclusion that petitioner was able through his retained powers to continue to benefit economically from the transferred property. We think this could be accomplished without subjecting himself to equitable restraints for breach of trust. It appears also that through those powers coupled with his corporate position and control petitioner was able to exercise additional authority over the amount of income derivable by the trusts from their investments. Circumstances and powers similar to these were pointed to in taxing the settlor-trustee in *Edison* v. *Commissioner, supra; Miller* v. *Commissioner*, 147 Fed. (2d) 189; *Williamson* v. *Commissioner*, 132 Fed. (2d) 489; *M. Friedman, supra*, and cases cited therein.

Petitioner's continued dominion over the corpus of each trust was further assured by the reservation of certain other powers as individual trustee. He could direct that the corpus be distributed to the extent which in his opinion was necessary, in the case of the wife for her support, maintenance, and use for reasonable travel and education, and, in the case of the children, for maintenance and education, and, as to any beneficiary, to meet any emergency. He could also direct the

sale and fix the price of all trust property. Petitioner urges that the first of these rights was limited by its terms and was not exercisable to satisfy his legal obligations, and that the second was not usable to the detriment of the beneficiaries. Without discussing separately or in detail the significance of those retained powers, it is perhaps sufficient to remark that they added materially to petitioner's retained "bundle of rights" over the property and, in our opinion, were, like those discussed above, usable by petitioner, with substantial "satisfactions of economic worth" to himself, within the bounds of activity to which he might be limited under the broad terms of the trust instruments. See *M. Friedman, supra,* and *Ellis H. Warren, supra.*

We conclude that, considered together, and "in the nexus of previous ownership, family economics, technical deduction and continued control," the rights retained by petitioner and the benefits enjoyable by him were such that there was no substantial change in his economic position as a result of the transfers in trust. In our view, therefore, this case is within the purview of the *Clifford* doctrine as applied in the *Stockstrom* case, *Anna Morgan,* 5 T. C. 1089; *M. Friedman, supra;* and *Leslie H. Green, supra.* Our supplemental opinion in *Estate of Louis Stockstrom,* 7 T. C. 251, is dispositive of petitioner's argument based upon T. D. 5488 and Mimeograph 5968, 1946 I. R. B. No. 2, Jan. 28, 1946. We hold that respondent did not err in determining that petitioner was taxable under section 22 (a) of the Internal Revenue Code on the income of the three trusts in 1940 and 1941.

Reviewed by the Court.

*Decision will be entered for respondent.*

---

BLACK, *J.*, dissenting: I dissent from the majority opinion as respects the trusts for the settlor's two children. I do not dissent from the majority view that the trust which petitioner established for his wife, Ruth, is controlled by our decision in *Louis Stockstrom,* 3 T. C. 255, modified by *Stockstrom* v. *Commissioner,* 148 Fed. (2d) 491. I think the *Stockstrom* case went very far in taxing to the settlor of certain long term irrevocable trusts for his grandchildren the income thereof on the ground that such income fell within the Supreme Court's decision in the *Clifford* case. I recognize, however, that our decision in that case was in all essential respects affirmed by the Eighth Circuit and that, wherever applicable, it should be followed. Therefore, I do not dissent from the majority view as respects the trust for petitioner's wife.

I think the two children's trusts are different, however, and are not controlled by the *Stockstrom* case. I think they are distinguishable for substantially the same reasons as we held the children's trusts were

distinguishable from the *Stockstrom* case in *J. M. Leonard*, 4 T. C. 1271. In that case, in holding that the children's trusts were not taxable to the settlors, J. M. Leonard and his wife, who created them, we said:

> The respondent places considerable emphasis upon the circumstance that one of the grantors was the sole trustee during the taxable years in question. He argues that this factor brings the instant proceedings within the doctrine of *Louis Stockstrom, supra*. We think the instant case is distinguishable on its facts from the *Stockstrom* case. In the *Stockstrom* case the three trusts which were made for the settlor's three adult children contained powers which enabled the settlor-trustee to shift income beneficiaries somewhat similar to the powers reserved to the grantor in *Commissioner* v. *Buck, supra*. There are no such powers granted to the settlor-trustees in the instant case. In the *Stockstrom* case the seven trusts which were set up for the benefit of Stockstrom's seven grandchildren, while not granting to the settlor-trustee powers which were as extensive as those contained in the trusts for his three adult children, did grant to the settlor-trustee the discretion to either accumulate the income or distribute it to the beneficiary. These trusts were for the lifetime of the beneficiaries. We construed this power as being broad enough to enable the settlor-trustee to completely withhold the income of the trust from the grandchild primary beneficiary throughout his lifetime and thereby give it to the remaindermen. To quote from the opinion itself in the *Stockstrom* case, the settlor-trustee *"was not required to distribute any part of the income to any of the beneficiaries during his lifetime."* We held that this power over the income, when coupled with the broad administrative powers granted the settlor-trustee over the corpus in these several trusts, caused the income to be taxable to the settlor, Stockstrom. * * *
>
> In the instant proceedings Leonard had no powers to cause the shifting of income from one beneficiary to another such as were present in the *Stockstrom* or *Buck* cases. * * * [Emphasis supplied.]

Just so here. The settlor-trustee in these two children's trusts had no power to shift income from one primary beneficiary to another. All corpus and accumulated income of each of the trusts for the children were to be paid to the beneficiary when he or she reached the age of 45 years, if they had not been paid sooner, within the discretion of the trustee. The powers in this respect are very similar to those in the *Leonard* case. An examination of the two cases will show that fact. The *Leonard* case has been followed by us in *Alma M. Myer*, 6 T. C. 77, and *W. L. Taylor*, 6 T. C. 201. See also *David L. Loew*, 7 T. C. 363. It seems to me that the two children's trusts in the instant case fall within the ambit of the foregoing cases and should be decided as they were decided—for the taxpayer. We have here no mere "temporary allocation of income" among the intimate members of a family group with the corpus coming back to the settlor after a short term such as was present in *Clifford* v. *Helvering*, 309 U. S. 331. Here the settlor had no power to ever vest in himself any of the income or corpus of the trust or give it to anyone else, except the primary beneficiary. It is true that the settlor conferred upon himself as the

individual trustee very broad administrative powers, but these, of course, had to be exercised in a fiduciary capacity and are not within themselves sufficient to require the taxing of the income of the trusts to settlor-petitioner. See *Cushman* v. *Commissioner*, 153 Fed. (2d) 510, reversing 4 T. C. 512. The powers which the trustee reserved to himself as either grantor or trustee in the *Cushman* case were very broad. This will be seen from the following quotation from the court's opinion, wherein it said:

* * * the petitioner reserved to himself as grantor power to control retention or sale of trust property and to direct investment and reinvestment of trust funds, and he invested himself as trustee with the extraordinary power of entering into capital readjustments as well as all the ordinary trustee powers, including that of voting the stock held in the trust. Analytically the powers held in the two capacities are, because of those different roles, different. The powers held as trustee are, of course, held in a fiduciary relationship and must be exercised only in the best interests of the beneficiaries. *The power to vote the stock held in trust may not be exercised by the trustee for his own purposes; and where such conduct is threatened, a court of equity will direct the voting of the stock.* See 2 Scott, *Trusts*, § 193.1. * * * [Emphasis supplied.]

Notwithstanding the very broad powers of administration which the settlor in the *Cushman* case reserved to himself as either grantor or trustee, the Second Circuit held that the income of the trust was not taxable to him under section 22 (a) and reversed the decision of this Court, which had so held in 4 T. C. 512. It seems to me that if the Second Circuit was right in the *Cushman* case, and I think it was, then the majority opinion in the instant case is wrong as to the two children's trusts.

I, therefore, respectfully dissent.

ARUNDELL and TYSON, *JJ.*, agree with this dissent.

———

VAN FOSSAN, *J.*, dissenting: For the reasons so well stated by Judge Black in his dissent, I am unable to agree with the majority of the Court in this case and therefore respectfully dissent.