## L. B. Foster, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 4134, 7200.   Promulgated January 29, 1947.

*S. Leo Ruslander, Esq.*, for the petitioner.
*Brooks Fullerton, Esq.*, for the respondent.

198

OPINION.

LeMire, *Judge*: The petitioner contends, first, that the question of his liability for tax on the income of the trust for the years involved under section 22 (a) is *res judicata* by reason of the prior decisions of this Court in *Lee B. Foster*, 22 B. T. A. 717; *L. B. Foster*, 26 B. T. A. 1328, and *L. B. Foster et al.*, Docket Nos. 67039, 67085–67087 (memorandum opinion, Sept. 26, 1935).

The first two of these cases involved identical issues, namely, the question of the petitioner's right to loss deductions resulting from the sale of securities to the Pauline L. Foster trust. The deductions were allowed on the theory that the trust was a separate and distinct tax entity. No such issue is involved in the instant case, and those decisions are not *res judicata* of any question now under consideration.

The third case involved, initially, several issues unrelated either to the issues involved in the prior cases or those present in the instant case. The question of petitioner's liability for tax on the income of the trust was there raised for the first time by an amended answer filed by the Commissioner at the hearing. The Commissioner made the contention that the trust income for 1929 was taxable to the petitioner under section 167 of the Revenue Act of 1928. We held against him on that question, citing *Theodore P. Grosvenor*, 31 B. T. A. 574; *Schweitzer* v. *Commissioner*, 75 Fed. (2d) 702, reversing *Edmund O. Schweitzer*, 30 B. T. A. 155; *Percy H. Clark*, 31 B. T. A. 1082; *Commissioner* v. *Yeiser*, 75 Fed. (2d) 956; and *Franklin Miller Handly*, 30 B. T. A. 1271. However, petitioner was held taxable under section 167 on that portion of the trust income which was used by the trustee to pay the premiums on the policies of insurance on petitioner's life then held in the trust.

The *Grosvenor* case was later reversed by the Supreme Court on authority of *Douglas* v. *Willcuts*, 296 U. S. 1. The *Schweitzer* case was reversed by the Circuit Court of Appeals for the Seventh Circuit (75 Fed. (2d) 702) on the same principle.

We think the respondent is correct in his contention that the previously decided cases relied upon by the petitioner are not *res judicata* in this proceeding. Although the statutory law has remained substantially the same since those cases were decided, there can be no doubt that the doctrine of *Helvering* v. *Clifford*, 309 U. S. 331, has given rise to an entirely different approach to the question of a grantor's liability for tax on the income of certain types of family trusts. Whether or not this change in the construction or application of the statutory law is sufficient to render the rule of *res judicata* inapplicable is a question that we do not have to decide here. See, however, *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620; *Blair* v. *Commissioner*, 300 U. S. 5; *Commissioner* v. *Arundel-Brooks Concrete Corporation*, 152 Fed. (2d) 225, and other cases cited in *Joseph Sunnen*, 6 T. C. 431. We said in the *Sunnen* case that:

* * * Until the rule is more clearly defined * * * we do not believe the doctrine of the *Blair* case requires a holding that any new legal concept enunciated in a subsequent decision, when the statutory law remains the same, renders the doctrine of *res adjudicata* inapplicable where the controlling facts and issues are identical. * * *

The question of petitioner's liability for tax on the income of the trust, under the provisions of section 22 (a), is now before us for the first time. That is an entirely different question from the one decided in the prior proceeding, which dealt with petitioner's liability under section 167. In *Helvering* v. *Stuart*, 317 U. S. 154, where we had considered only the effect of section 166 (*R. Douglas Stuart*, 42 B. T. A. 1421), the Supreme Court remanded the case to us for consideration of the applicability of sections 167 and 22 (a).

Whether the income of a trust is taxable to the grantor under section 22 (a) depends not only upon the expressed provisions of the trust agreement and the rights and powers therein reserved to the grantor, but also upon the manner in which the trust is administered and the conduct of the grantor in his relations with the trustee and the beneficiaries. Although the trust agreement may remain unaltered, as it did in the instant case, these latter factors may change from year to year. It is only where the same essential facts, as well as the same general question and the same law, are present that the rule of *res judicata* is applicable. *Blair* v. *Commissioner, supra; United Business Corporation of America*, 33 B. T. A. 83.

There is no agreement between the parties here nor is there any evidence that the essential facts were the same during the taxable years now before us, as during the year (1929) involved in the prior proceeding. On the contrary, the evidence shows changes in the factual situation. For instance, in 1940 an account was opened in the name of petitioner's wife at the Peoples-Pittsburgh Trust Co. in which deposits of trust income were made and on which petitioner was able to draw at will under a power of attorney given to him by his wife.

The question of petitioner's liability under section 22 (a) and the doctrine of *Helvering* v. *Clifford, supra*, for tax on the income of the trust for the years here involved is one that has never been judicially determined. It must now be decided on the merits and upon the evidence adduced in these proceedings.

The declared purpose of the trust was to provide income for the living expenses of petitioner and his wife and their children. The wife's interest was contingent upon her continuing to live with petitioner as his wife, or, in the event of his predeceasing her, having been living with him at the time of his death. The provisions of the trust agreement governing the distribution of the trust income require that it all be paid to the wife, without any condition or restriction as to its use, as long as the petitioner is living and she is living with him as his wife. The petitioner retained no power under the trust agreement to alter or amend any of the provisions of the trust, or to with-

draw any of the principal or income, or to change any of the beneficial interests. The children both became of age prior to 1940.

The principal power which the petitioner retained as grantor was to direct the investment of the trust funds. All sales and purchases of trust securities were subject to his approval. While, as we have often pointed out, this is a fact to be considered along with the other evidence, it is not sufficient in itself to bring the trust within the rule of *Helvering* v. *Clifford*. The grantor here did not stand to realize any economic gain from the trust by any right to buy or sell to the trust at his own terms or for his own advantage. This was not within the powers which the grantor reserved and, generally, would not be sanctioned by the laws governing the administration of trusts. All that the petitioner did here was to leave matters so that in the administration of the trust he could add his own knowledge and experience to that of the trustee for the best interest of the trust. The facts in this respect are much like those in *David L. Loew*, 7 T. C. 363 (July 12, 1946). We held in that case, after reviewing *Helvering* v. *Clifford, supra; Commisioner* v. *Buck*, 120 Fed. (2d) 775; *Stockstrom* v. *Commissioner*, 151 Fed. (2d) 353, and other related cases, that the reservation by the grantor of the powers, among others, to direct the investment of the trust funds and to receive the income of the trust for the benefit of his minor children, did not bring the trust within the rule of the *Clifford* case.

Here, the income was not to be paid, and in fact was not paid, to petitioner, as fiduciary or otherwise, but, with one or two exceptions, was all deposited in the wife's bank accounts. Petitioner had access to the funds only by reason of the power of attorney which the wife gave him to handle one of the accounts for her. He could not lawfully, or under any provision of the trust agreement, make any use of the funds for his purposes. In handling the account for his wife he did from time to time appropriate some of the income for his own uses, but the evidence is, and the respondent admits the fact, that he repaid those amounts. Respondent's requested finding of fact numbered 10, based upon the petitioner's testimony, is that "At times, petitioner used the funds of the trust for his own personal use but later reimbursed the trust."

The respondent has not determined in his deficiency notices, nor has he made any contention in his brief, that the income of the trust, except for the amounts used to pay the premiums on policies of insurance on petitioner's life, is taxable to the petitioner under section 167 and the doctrine of *Douglas* v. *Willcuts, supra*.

On the evidence of record in these proceedings, we hold that the petitioner is not taxable on the income of the trust under the provisions of section 22 (a).

The only remaining issue is petitioner's liability for tax on the amounts of trust income used to pay the premiums on the policies of insurance upon his life. On this question it is the respondent who raises the plea of *res judicata*, based upon our prior decision in *L. B. Foster et al., supra.* What we decided in that case was that petitioner was taxable on the premiums paid out of the trust income by the trustee during the taxable year 1929. The question as to what premiums were paid by the trustee, or paid out of the trust income in any taxable year is one of fact, to be determined from the evidence. The law (sec. 167 (a) (3), I. R. C.) is clear enough as to the tax consequences, once the facts are determined. It requires the inclusion in gross income of the grantor of any part of income of a trust which "is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor * * *." There was no provision in the trust agreement for the payment of the premiums out of the trust income, or corpus, and, hence, none of the trust income can be said to have been so payable in the discretion of the grantor or any other person. Nevertheless, some of the premiums were actually paid by the trustee out of the trust income, presumably with the knowledge and consent of the trustee, the grantor, and his wife. Plainly, those payments fall within the provisions of section 167 (a) (3), as did the payments for 1929 upon which we ruled in *L. B. Foster et al., supra.*

The more troublesome question here is the one of fact as to what amounts of trust income were applied to the payment of the premiums. The trustee's accounts show $829.95 of premiums paid by the trustee in 1940, but none in the other years. Some of the 1940 and 1941 premiums were paid by the petitioner out of his own funds, but he was reimbursed for those payments by check drawn on his wife's account at the First National Bank, in which the distributable income of the trust was all deposited after January 18, 1941. After that account was opened all the premiums were paid by checks drawn on it and signed by the petitioner's wife.

If the wife had voluntarily paid the premiums with her own funds which she was free to spend in any manner she saw fit, without any direction from the petitioner or the trustee, we would have to hold, under our prior decisions, that the premiums were not paid out of trust income and were therefore not taxable to the petitioner under section 167 (a) (3). See *Stephen Hexter*, 47 B. T. A. 483; *George F. Booth*, 3 T. C. 605. On the evidence before us, however, we can not make that finding. All of the parties seem to have understood and intended that the premiums were to be paid out of trust income deposited in the wife's account at the First National Bank. The evi-

dence indicates that the account was opened principally for that purpose. The payment of insurance premiums, income taxes (of the wife), interest on the insurance loan, and nominal bank charges were the only purposes for which the account was ever used. All of the deposits in the account were of income from the trust. The trustee prepared the insurance premium checks, had the wife sign them, and then forwarded them to the insurance companies. We do not think that it was ever intended that the trust income deposited in the account should be subject to the wife's unfettered use and enjoyment. We think that the arrangement for paying premiums through the special account standing in the wife's name amounted to no more than an attempt to make it appear that they were being paid out of the wife's own funds rather than out of trust income. The parties were undoubtedly cognizant of this Court's ruling in *L. B. Foster et al.*, *supra;* that the petitioner must be taxed on the trust income which the trustee applied to payment of premiums.

The facts here are not unlike those in *Henry A. B. Dunning*, 36 B. T. A. 1222; petition for review dismissed, 97 Fed. (2d) 999 (C. C. A., 4th Cir.). There the trust instrument did not provide for the payment of premiums on the policies of insurance on the grantor's life, but his wife paid them, at his suggestion, out of her distributable share of trust income. We held that the amount of the premiums so paid was taxable income to the grantor.

We can not doubt that the petitioner here was a party to the plan for payment of the premiums out of trust income. He had decided to discontinue paying the premiums himself, upon the advice of his attorney, so that the policies might not be included in his gross estate, and had made no other provisions for their payment. There is no suggestion that he was not fully able to pay the premiums himself, or that he intended to drop the policies and lose the money invested in them, or that the wife voluntarily offered to pay the premiums to protect her interests in the policies as a beneficiary of the trust. Cf. *George F. Booth*, *supra.*

To the extent that the premiums for any of the tax years involved were paid out of trust income either directly by the trustee or by checks drawn on the wife's account at the First National Bank, they should be included in computing the net income of the petitioner-grantor under section 167 (a) (3).

Reviewed by the Court.

*Decision will be entered under Rule 50.*