Wilson R. Anderson v. Commissioner.
Anderson v. Commissioner
Docket Nos. 95468 and 1211-62.
United States Tax Court
T.C. Memo 1964-88; 1964 Tax Ct. Memo LEXIS 247; 23 T.C.M. (CCH) 529; T.C.M. (RIA) 64088; April 6, 1964
Wilson R. Anderson, pro se, 231 35th St., Milwaukee, Wis. Jerome M. Feltman, for the respondent. SCOTT Memorandum Findings of Fact and Opinion Scott, j/udge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1958, 1959, and 1960 in the respective amount of $285.89, $159.15, and $375.08. The issues for decision are: (1) Whether petitioner is entitled to a deduction in the calendar year 1958 for a loss occasioned by the destruction of a driveway servicing property which he owned and had rented to various tenants, and if so, the amount of the deductible loss. (2) Whether petitioner is entitled to deductions in 1959 and 1960 for amounts representing the difference in the wages which he actually received and the amount which he estimated he would have received had he remained during these years in the same type of work in which he was employed in 1955 and prior years and the difference between the actual rental he received from a property improved with a concrete block building and the rental he estimated he would have received had the driveway which had served the building in previous years *249 not been removed. (3) Whether petitioner is entitled to deductions for legal expenses in the years 1958 and 1959 in the respective amounts of $300 and $100. (4) Whether petitioner overstated his deduction for interest in the calendar year 1959 by the amount of $136. (5) The proper amount of deduction to which petitioner is entitled for medical expenses in the year 1960. Findings of Fact Petitioner, an individual residing in Milwaukee, Wisconsin, filed joint income tax returns with Gertrude Anderson for each of the calendar years 1958, 1959, and 1960 with the district director of internal revenue at Milwaukee, Wisconsin. During the calendar years 1958 and 1959 petitioner was employed by two different construction companies, and also during 1959 was employed by American Motors Corporation as a moulder, and during the year 1960 was employed by this same corporation as a moulder. During each of the years here involved petitioner owned real property in Columbus, Wisconsin, on which was located a concrete block building. Petitioner acquired the land on which this building was located in late 1946 or early 1947. The land consisted of approximately a city block, containing seven *250 lots, and although it was within the city limits of Columbus, Wisconsin, it was located on United States Highway No. 16, which was maintained by the State Highway Department of the State of Wisconsin. Petitioner, shortly after acquiring the property, began to build a concrete block building of a type to be used for a Kaiser-Frazer Garage with a connecting filling station. He obtained from the State Highway Commission of the State of Wisconsin a permit to place an 88-foot driveway with curbing into the property. During 1947 petitioner completed the driveway into the property in accordance with the permit, doing the major portion of the work himself, at a cost not including his own labor or any portion of an amount paid for a survey of the land, of $1,200, and at some time prior to 1950 completed the concrete block building and filling station at a total cost of $18,600. Shortly after its completion the building was rented to a machinery company. During the year 1958 and for some years prior thereto the building had been rented by petitioner to the Rural Electrification Administration. The Rural Electrification Administration vacated the building sometime after 1958 and thereafter *251 during the years here involved, petitioner rented the building to the operator of a liquor store at a rental of $140 per month. The building was continuously rented by petitioner during the years 1958, 1959, and 1960. In order to obtain a permit to place a building on the property and the driveway for access thereto, petitioner had a survey made of the property and five metal stakes placed at various points. The total cost of the survey including the metal stakes and placement thereof was $135. Petitioner on each of his income tax returns for the years here involved claimed depreciation on the concrete block building at a 3 percent rate. In each of the years 1958 and 1960 he reported gross rental from the building of $1,680; and in 1959 reported a gross rental of $1,540. After deducting expenses including depreciation, he reported a net profit from rental of the concrete block building of $404.30 in 1958, $182.25 in 1959, and $111.70 in 1960. Petitioner claimed no depreciation deduction in 1958 on the concrete driveway and had not claimed any depreciation deduction on the concrete driveway for years prior to 1958. During the early summer of 1958 the State Highway Commission of *252 the State of Wisconsin began, as a Federal Aid Project, grading work to improve Highway No. 16 along which petitioner's property lay. When petitioner visited his property in mid-October 1958, he saw that his 88-foot concrete driveway had been demolished and his survey stakes removed. Petitioner also noticed that a portion of a road or street had been placed on his property. He immediately went to see the Chairman of the State Highway Commission of the State of Wisconsin. He showed the Chairman of the Highway Commission the permit he had obtained to place the driveway into his property and was informed that the permit should not have been issued and that no permit to replace such driveway would be issued again. An attorney wrote a letter to the Highway Commission of the State of Wisconsin on behalf of petitioner with respect to the removal of petitioner's driveway and the placing of a portion of a road on petitioner's property. Under date of October 29, 1958, this attorney received a letter from the State Highway Commission of Wisconsin which read as follows: SUBJECT: Project DF 06-2(14), S.T.H. 146-Columbus Road, U.S.H. 16, Columbia County As requested in your letter of October 16, 1958, representatives *253 of this office, Mr. Kemp and Mr. Morris, visited you on October 22, 1958. You will recall that at that time Mr. Morris estimated that the encroachment mentioned in your letter would be removed from Mr. Anderson's property and the property restored to its former condition by October 24. The work was actually completed by October 23 and we fail to see any indication of damage to the property which would call for compensation. The new driveway mentioned in your letter was constructed at a location which was approved by representatives of the REA who were contacted by Mr. Morris and Mr. Streu the contractor. The new driveway is actually west of the original drive, not east as mentioned in your letter. Access from Hurelle Street has not been changed. We hope this matter has been resolved to the satisfaction of Mr. Anderson and yourself. The driveway referred to in this letter which was placed into petitioner's property by the State Highway Commission was 16 feet wide. The 16-foot driveway was placed into petitioner's property at no cost to him. During the year 1955 and for some years prior thereto petitioner had worked as a moulder at the Pelton Steel Casting Company. On December 21, 1955, petitioner *254 raised a question with his foreman with respect to his time card and was at that time laid off from work, and on December 30, 1955, was fired. After being fired petitioner attempted to obtain unemployment insurance payments and also attempted to obtain the unemployment payments for a reteran generally referred to as "G. I." unemployment payments. After being turned down on both of these claims by the Industrial Commission of the State of Wisconsin, petitioner filed a suit in the Circuit Court of Dane County of the State of Wisconsin requesting a jury trial. Under date of September 9, 1957, petitioner's motion for a jury trial in connection with his case against the Industrial Commission of the State of Wisconsin was denied. Under date of March 30, 1959, a Memorandum Decision was entered in the case denying petitioner's claim for unemployment compensation under the Veterans' Act, stating in part that the Industrial Commission had denied petitioner the benefits of the claimed unemployment compensation upon the ground that he was ineligible therefor because he had been discharged for misconduct. Subsequent to December 1955 until approximately the middle of 1959 petitioner worked at *255 various construction jobs because he was unable to obtain employment as a moulder. Petitioner was also unable to obtain a referral card from the Employment Commission of the State of Wisconsin for employment as a moulder. In June 1959 petitioner obtained employment as a moulder with American Motors Corporation. In either the year 1956 or 1957 petitioner paid an attorney a fee of $300. Petitioner on his 1958 income tax return deducted an amount of $1,332 with the explanation "Involuntary seizure of portion of Business property at Columbus, Wis. by Highway Dept. - destroyed concrete driveway & demolished survey stakes. Total Loss." On this return petitioner claimed a deduction of $300 with the following explanation: "Legal Expense against Ind. Comm. of Wis. re unemployment comp." Respondent disallowed both of these claimed deductions with the following explanations: The deduction of $1,332.00 claimed as a loss resulting from an involuntary seizure of business property is disallowed because you have not established that you are entitled to such a deduction. Taxable income is increased in the amount of $1,332.00. The deduction of $300.00 claimed for legal expense is disallowed *256 because you have not established that you are entitled to such a deduction. Taxable income is increased in the amount of $300.00. On his income tax return for the year 1959 petitioner claimed a deduction of $12,000 as a loss on legal case against the Industrial Commission, State of Wisconsin, and on an attached form gave the following explanation: 1959 Industrial Commission State of Wisconsin blacklisting and in part Edwin C. Wilkie Total cost $240,000 - for 20 years at $12,000 per year On this return petitioner also claimed a deduction of $100 as legal expense with the following explanation: "Legal expense against Ind. Comm. of Wis., re unempl. comp." Respondent disallowed both of these deductions and also disallowed $136 of the interest expense claimed by petitioner with the following explanations: The deduction of $12,000.00 claimed as a loss on a legal case against the Industrial Commission of the State of Wisconsin is disallowed because you have not established that you are entitled to such a deduction. Taxable income is increased in the amount of $12,000.00. The deduction of $100.00 claimed for legal expense is disallowed because you have not established that you *257 are entitled to such a deduction. Taxable income is increased in the amount of $100.00. It is determined that your interest deduction claimed in the amount of $136.00 as an itemized deduction represents a duplication of a $136.00 rental interest expense deduction. Taxable income is increased in the amount of $136.00. For the year 1960 petitioner claimed a deduction of $12,000 as a loss on legal case with an explanation similar to that given for the claimed $12,000 loss in his 1959 return. In the year 1960 petitioner claimed a total medical expense deduction of $330 consisting of medical and dental expenses of $319.12 and total drugs and medicine expenses of $10.88. Respondent in his notice of deficiency disallowed the claimed $12,000 deduction with an explanation similar to that given for the similar disallowance in the year 1959. Respondent allowed only $143 of the claimed medical expense deduction which he computed by disallowing in full the claimed cost of drugs and medicine of $10.88, determining as the amount of other medical and dental expenses $307.12 instead of the claimed $319.12 and reducing the $307.12 medical expenses determined by $178.88, explained as "3 percent of *258 adjusted gross income." Opinion Petitioner apparently contends that he is entitled to claim the $1,332 loss from the destruction of his 88-foot driveway as a theft loss under section 165(c)(3) of the Internal Revenuecode of 1954 since he views the demolition of his driveway as a seizure by the State in the nature of theft. Respondent points out that the circumstances here do not support a theft loss but apparently concedes that petitioner's loss if any was of business property. Respondent argues that the loss if any should be denied because of failure of petitioner to meet his burden of proof. From the facts which we have set forth, we conclude that petitioner sustained a loss from the destruction of property either used in a trade or business or in a transaction entered into for profit, that the loss was sustained in the calendar year 1958, and is deductible under section 165(c)(1) or (2) of the Internal Revenue Code of 1954. [1] The more difficult issue in this case is the amount of loss sustained by petitioner in 1958. From approximately 1948 throughout the years here involved the building which the driveway that was destroyed served had been rented by *259 petitioner and petitioner reported the profit from such rental on his Federal income tax returns. Petitioner claimed depreciation on the building but claimed no depreciation on the driveway apparently under the misconception that the driveway was part of the land and not subject to depreciation. It is not clear from the facts, but the inference is that the driveway was not entirely on petitioner's land, but served as an entrance to petitioner's land from United States Highway No. 16 and was placed at least partially on the highway right-of-way. The placing of such a driveway on property owned by the State or owned by petitioner was a capital investment which petitioner was entitled to recover through depreciation. D. Loveman & Son, Inc., 34 T.C. 776, 806-808 (1960), affirmed per curiam 296 F. 2d 732 (C.A. 6, 1961), certiorari denied 369 U.S. 860. *260 The facts show that sometime in 1947 petitioner was given a permit to place an 88-foot driveway into United States Highway No. 16 by a representative of the State Highway Commission of the State of Wisconsin. When improvements were being made to United States Highway No. 16 in 1958, this driveway was destroyed. The reason for its destruction is not clear from the evidence, but we infer from the facts in the record that the engineer in charge of the improvements to Highway No. 16 had the driveway removed and replaced it with a 16-foot driveway without consulting petitioner, but with the approval only of petitioner's tenant. When petitioner protested to the State Highway Commission he was informed that representatives of the Highway Commission thought the driveway had been put in without a permit since a permit should not have been issued for an 88-foot driveway. The Highway Commission not only refused to place a driveway wider than 16 feet into petitioner's property but refused petitioner a permit to place such a wider driveway in at his own expense. Any way the matter is viewed, petitioner's driveway was demolished and the driveway was property used by petitioner in a trade or *261 business or in a transaction entered into for profit. In William Heyman, 6 T.C. 799 (1946), we allowed as a loss the amount we determined to be the unexhausted basis for gain or loss on six buildings demolished because they were not rented and the owner of this business property thought that demolishing the buildings would reduce her taxes. In George S. Gaylord, 3 T.C. 281, 296 (1944), affd. 153 F. 2d 408 (C.A. 9, 1946), we allowed a loss for destruction of pear trees by the owner of property which had been previously used as a commercial pear orchard, the owner having decided to discontinue the operation of the pear orchard and convert the property to other uses. In the Gaylord case we commented that the evidence on which to base the determination of the loss from the destruction of the pear trees was sketchy. If the destruction of petitioner's driveway under the circumstances here involved were to be viewed as in the nature of a condemnation, then to the extent that no award was made to petitioner for the destruction of the driveway, the amount of the loss occasioned thereby would be deductible. Horn & Hardart Baking Co., 20 B.T.A. 486, 489-490 (1930). *262 The evidence shows that petitioner's cost of the driveway without apportioning thereto any part of $135the survey cost was $1,200, and we have so found. The evidence does not show what portion of the survey cost should be apportioned to the driveway but does show that some portion was applicable thereto. Weighing heavily against petitioner for this deficiency in proof, we find that $20 of the survey cost is applicable to petitioner's 88-foot driveway. Although petitioner claimed no depreciation on the driveway, a deduction for the allowable depreciation must be made in determining the adjusted basis of the driveway. Cf. United States v. Koshland, 208 F. 2d 636 (C.A. 9, 1953). Petitioner claimed 3 percent a year on the building, and since no question has been raised with respect to this claimed deduction, we hold that the allowable depreciation on the driveway would be 3 percent a year and that the driveway should have been depreciated for a 10-year period prior to the year 1958. Therefore, allowable depreciation on the driveway for years prior to 1958 would be $366 reducing petitioner's basis in the driveway at the time of its destruction to $854. It is also necessary *263 to determine whether the 16-foot driveway placed into petitioner's property by the State should be considered as partial compensation for the demolition of his 88-foot driveway, and if so what value should be assigned to the 16-foot driveway. Petitioner stated that the 16-foot driveway was of no value and referred to his property as "land locked" and good only for a helicopter filling station. The letter from the Highway Commission to petitioner's attorney in referring to no damage to petitioner's property which would call for compensation was apparently referring to the placing of a portion of a road thereon and the removal thereof and has no bearing on the issue here. Certain cases with respect to demolition losses have considered that if a building is demolished because of being unsuitable for further use, the transaction is closed and a loss may be taken, but if it is demolished to make way for the erection of a new structure the result is merely the substitution of a more valuable building for a less valuable one, and the loss from the demolition may reasonably be considered as part of the cost of the new asset to be depreciated during its life. See Henry Phipps Estate, 5 T.C. 964, 969 (1945), *264 and cases there cited. Even from the sketchy evidence in the instant case, we conclude that the new driveway to petitioner's property was less valuable than the undepreciated basis of the old driveway. Since the destruction of the 88-foot driveway was without petitioner's consent, we view the facts here to be more comparable to a condemnation than to a voluntary destruction. The new driveway was some compensation for petitioner's old driveway and to the extent of such compensation, petitioner has not sustained a deductible loss under section 165 of the Internal Revenue Code of 1954 from the destruction of the 88-foot driveway. It is therefore necessary to place a value on the 16-foot driveway and on the basis of the scanty evidence of record we hold that this driveway had a value of $240, thus leaving petitioner with a deductible loss of $614 in the year 1958 from the demolition of his 88-foot driveway. Petitioner testified that his $12,000 deductions in 1959 and 1960 were arrived at by computing the difference in the wages that he received in doing construction work and those he would have received in working as a moulder plus the difference in the $140 month *265 rental he received for his concrete block building and the $450 rental which he believed he would have received had his 88-foot driveway been allowed to remain into the property. Both of these items are anticipated income which petitioner did not in fact receive. Anticipated earnings which have never been declared as income do not constitute a deductible loss. Hort v. Commissioner, 313 U.S. 28 (1941), and Palmer Hutcheson, 17 T.C. 14 (1951). We therefore sustain respondent in his disallowance of the $12,000 deductions claimed by petitioner in the years 1959 and 1960. Petitioner failed to prove that he is entitled to any deduction for attorneys' fees in the years here in issue. He testified that he paid an attorney a $300 fee sometime in 1956 or 1957. If this is the expenditure which petitioner deducted in 1958, he has shown no basis for a deduction in the later year for a payment made in 1956 or 1957. If this is not the payment which petitioner deducted in 1958, he has shown no other expenditure of $300 for legal fees in any year. There is no testimony in the record with respect to the $100 claimed deduction for legal fees in 1959. We therefore sustain respondent's *266 disallowance of these deductions for failure of proof on the part of petitioner. There is likewise no evidence to show that respondent erred in disallowing $136 of the deduction claimed by petitioner for interest paid. We therefore sustain respondent on the disallowance of this claimed deduction. There is no evidence whatsoever in the record with respect to the disaloowed medical expenses, and we therefore sustain respondent's determination in this regard. Decision will be entered under Rule 50. Footnotes
1. Secs. 165(a), (b), and (c)(1) and (2), I.R.C. 1954, provide: (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and * * *↩